[Crim. No. 22507. Dec. 6, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
FELIX LEONARDO MANCHENO, Defendant and Appellant.

COUNSEL

Jeffery A. Brightwell, under appointment by the Supreme Court, and Robert J. Wade for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROUSSARD, J.**—Defendant appeals from a judgment of conviction following a plea of guilty entered pursuant to a plea bargain. His appeal raises the

question whether the agreement was violated by the failure of the trial court to implement one of the terms of the plea bargain and, if so, what is the proper remedy.

The underlying facts arise out of the robbery of a restaurant and three all-night convenience markets. The offenses occurred within a short period of time during the early morning hours of November 24, 1979. Defendant Mancheno and two codefendants were charged with four counts of robbery in violation of Penal Code section 211. The information alleged that the defendants were armed during the commission of the offenses within the meaning of Penal Code section 12022, subdivision (a). The codefendants were also alleged to have used a firearm during the commission of the robberies within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1).

Defendant originally pled not guilty and denied the special allegations. On January 16, 1980, defendant's motion to relieve the public defender and to proceed in propria persona was granted. On March 20, 1980, defendant withdrew his plea of not guilty. On the same day, pursuant to a plea bargain, defendant entered pleas of guilty to two counts of robbery and admitted the armed allegation.

At the time of the guilty plea, the following colloquy occurred:

"THE COURT: . . . Mr. Mancheno, I understand it is your desire now to plead to two counts provided they are made concurrent; is that correct?

"THE DEFENDANT: Right.

"THE COURT: And you also have asked me to provide a diagnostic study by the Department of Corrections, is that right?

"THE DEFENDANT: Right.

". . . . . . . . . . . . . . . . . . . .

"MR. COEN [DEPUTY DISTRICT ATTORNEY]: . . . You and I and the Judge have talked about this and you have agreed you want to plead to Counts III and IV in that allegation and plead to the two armed allegations and the Judge would go ahead with what he told you earlier with the diagnostic study and concurrent time.

"Is that what you wish to do at this time?

"THE DEFENDANT: Yes, I do.

" . . . . . . . . . . . . . . . . . . . .

"MR. COEN: . . . Now, the Judge has made a promise to you that after the diagnostic study if he chooses to send you to prison it would be concurrent. In other words, Counts III and IV would run at the same time.

"Do you understand that?

"THE DEFENDANT: Right . . . I won't get more than four, right, that would be the maximum?

"MR. COEN: That's what the Court indicated. . . . "

Following this discussion and acceptance of the plea by the court, the judge ordered a probation report and set pronouncement of the judgment for April 17, 1980. On that date, the judge stated that he had read and considered the transcript of the guilty pleas and the probation report. He then asked defendant if there was any "just or legal cause why sentence should not now be pronounced?" Defendant answered, "No." At this time there was no mention of the term of the plea bargain calling for a diagnostic study. Defendant was then sentenced to four years in state prison. He received the midterm of three years on each count, with an additional year on the armed allegation. The sentences were concurrent.

 Defendant's sole contention on appeal is that he was denied the benefit of his plea bargain because the court failed to order that a diagnostic study be done by the Department of Corrections. We agree with defendant's contention and conclude that he is entitled to specific enforcement of this term of the plea bargain.[1]

Plea bargaining is an accepted practice in American criminal procedure.[2] (*People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409].)

---

[1]Defendant was sentenced in April 1980 to a term of 4 years, with 238 days presentence credit. By postargument letter from the Attorney General, we have learned that defendant was paroled on May 24, 1982. Thus, although defendant is entitled to specific performance, any remedy is of limited value under the circumstances of this case. Nevertheless, because the issue posed is one of public interest that is likely to recur, this court exercises its inherent discretion to resolve the issue for the guidance of courts in future cases presenting similar questions. (See *In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].)

[2]We do not address the impact or validity of Penal Code section 1192.7, added by initiative on June 8, 1982, as part of Proposition 8. That section prohibits the use of plea bargaining in cases involving serious felonies, including robbery. The bargain in this case was entered into long before the passage of Proposition 8, and section 1192.7 affects neither the validity of this plea bargain nor its enforcement.

The process is not only constitutionally permissible (*Brady* v. *United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463]), but has been characterized as an essential and desirable component of the administration of justice. (*Santobello* v. *New York* (1971) 404 U.S. 257, 260-261 [30 L.Ed.2d 427, 432, 92 S.Ct. 495].) Concomitant with recognition of the necessity and desirability of the process is the notion that the integrity of the process be maintained by insuring that the state keep its word when it offers inducements in exchange for a plea of guilty.

"This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello* v. *New York, supra,* 404 U.S. at p. 262 [30 L.Ed.2d at p. 433].)

■ The Supreme Court has thus recognized that due process applies not only to the procedure of accepting the plea (see *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]), but that the requirements of due process attach also to implementation of the bargain itself. It necessarily follows that violation of the bargain by an officer of the state raises a constitutional right to some remedy. (See *Santobello, supra,* 404 U.S. 257, 266-267 [30 L.Ed.2d 427, 435-436] (conc. opn. of Douglas, J.); *People* v. *Calloway* (1981) 29 Cal.3d 666, 676, [175 Cal.Rptr. 596, 631 P.2d 30] (dis. opn. of Bird, C. J.); Westin & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains* (1978) 66 Cal.L.Rev. 471, 474-475, fn. 10, 476, fn. 16 (hereinafter cited as *Broken Plea Bargains*).)

■ The goal in providing a remedy for breach of the bargain is to redress the harm caused by the violation without prejudicing either party or curtailing the normal sentencing discretion of the trial judge. The remedy chosen will vary depending on the circumstances of each case. Factors to be considered include who broke the bargain and whether the violation was deliberate or inadvertent, whether circumstances have changed between entry of the plea and the time of sentencing, and whether additional information has been obtained that, if not considered, would constrain the court to a disposition that it determines to be inappropriate. Due process does not compel that a particular remedy be applied in all cases. (*People* v. *Calloway, supra,* 29 Cal.3d at p. 673.)

■ The usual remedies for violation of a plea bargain are to allow defendant to withdraw the plea and go to trial on the original charges, or to specifically

enforce the plea bargain. Courts find withdrawal of the plea to be the appropriate remedy when specifically enforcing the bargain would have limited the judge's sentencing discretion in light of the development of additional information or changed circumstances between acceptance of the plea and sentencing. Specific enforcement is appropriate when it will implement the reasonable expectations of the parties without binding the trial judge to a disposition that he or she considers unsuitable under all the circumstances.

"Specific enforcement of a plea bargain agreement is actually a broad term covering several different types of relief. The remedy differs depending upon the nature of the breach and which party is seeking specific enforcement. When the breach is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain. When the breach is a refusal by the court to sentence in accord with the agreed upon recommendation, specific enforcement would entail an order directing the judge to resentence the defendant in accord with the agreement. The People as well as a defendant may seek such specific enforcements. The effect is to limit the remedy to an order directing fulfillment of the bargain. In such instances, the defendant is not allowed to withdraw his guilty plea." (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 13 [136 Cal.Rptr. 409, 559 P.2d 1028].)

In the instant case, defendant seeks specific enforcement of the term of the bargain calling for a diagnostic study. Application of the facts of this case to the principles enunciated in our prior decisions leads us to conclude that specific enforcement is the appropriate remedy.

*People* v. *Flores* (1971) 6 Cal.3d 305 [98 Cal.Rptr. 822, 491 P.2d 406] is a case where this court found specific performance to be the appropriate remedy. In *Flores,* defendant pled guilty to a robbery count and an armed allegation with the understanding that he would receive a maximum sentence of five years to life in exchange for dismissal of fourteen other charges. After acceptance of the plea, the court asked the defendant how the crime had been committed, to which he replied in effect that he had used a firearm. At that time, Penal Code section 12022.5[3] mandated an additional five-year prison term where a firearm was used during the commission of the robbery, but no one had at any time advised the defendant of that fact. The trial court added five years to the bargained for term. Under the circumstances of that case, we held that "in entering his plea defendant bargained with recognized authorities for a sentence of no more

---

[3]When *Flores* was decided, Penal Code section 12022.5 provided in pertinent part: "Any person who uses a firearm in the commission . . . of a robbery . . . upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the State prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence . . . ."

than imprisonment for five years to life and that he must be given the benefit of his plea bargain." (*Flores, supra,* at p. 309.) *Flores* then directed specific enforcement of the bargain.

The defendant in *People* v. *Johnson* (1974) 10 Cal.3d 868 [112 Cal.Rptr. 556, 519 P.2d 604] pled guilty to a charge of credit card forgery (Pen. Code, § 484f, subd. (2)) in exchange for a misdemeanor sentence, suspension of sentence, and a grant of probation. Prior to sentencing, the trial court discovered that defendant had concealed his true name and past criminal record, and the court sentenced the defendant to state prison contrary to the plea bargain. At no time did the court inform Johnson of his right under Penal Code section 1192.5[4] to withdraw the plea, and neither did Johnson or his counsel request a withdrawal of the guilty plea after the bargain was disapproved. On appeal, this court reversed the judgment and ordered that defendant be allowed to withdraw his plea. Rejecting Johnson's claim that he should be entitled to specific enforcement of the bargain, we noted that implicit in the language of section 1192.5 was the premise that the court has broad discretion to withdraw its prior approval of a negotiated plea. The result in *Johnson* can also be explained by the court's reluctance to grant equitable relief to a defendant who had obtained the bargain through the concealment of facts. (See *People* v. *Johnson, supra,* at p. 873; see also *People* v. *Calloway* (1981) 29 Cal.3d 666, 678 [175 Cal.Rptr. 596, 631 P.2d 30] (dis. opn. of Bird, C. J.).)

In *People* v. *Kaanehe, supra,* 19 Cal.3d 1, defendant pled guilty to grand theft (Pen. Code, § 487) and petty theft with a prior felony conviction (Pen. Code, § 484, former § 667) in exchange for dismissal of 12 additional counts

---

[4]At the time of the proceeding in *Johnson,* Penal Code section 1192.5 provided: "Upon a plea of guilty or nolo contendere to an information or indictment, the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it.

"Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on such plea to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea.

"If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea.

"If such plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available.

"If such plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals."

charging similar crimes. In addition, the bargain provided that the prosecutor would refrain from recommending or arguing the disposition of the case at the time of imposition of the judgment and sentence. The prosecution breached that agreement by writing a six-page letter to the Department of Corrections criticizing the probation officer's recommendation as well as arguing in the judge's chambers for imposition of a state prison sentence. On appeal, defendant contended that the trial court erred in refusing to permit him to withdraw his guilty plea. The People's response was to argue that the plea bargain should be specifically enforced by rearraigning defendant and striking the prosecutor's letter from the record, and ordering the prosecutor to comply with the agreement.

We rejected the People's request for specific enforcement because there was a substantial possibility that the remedy would not completely repair the harm caused by the prosecutor's breach. (*Kaanehe, supra,* at p. 14.) *Kaanehe* reiterated the concern underlying *Johnson,* that a defendant and prosecutor not be able to bind a trial court in exercising its customary sentencing discretion (*id.*), but noted that the remedy sought by the People in *Kaanehe* did not raise those concerns. The court ordered that defendant be given the option of (1) rearraignment for sentencing with the prosecutor's letter stricken from the record, or (2) the right to withdraw his plea of guilty upon condition that all charges dismissed pursuant to the bargain be restored and trial proceedings resumed. (*Id.,* at p. 15.)

We most recently addressed this issue in *People* v. *Calloway, supra,* 29 Cal.3d 666. In that case defendant appealed from a judgment sentencing him to state prison after his probation was revoked upon his admission of violating probation based on a battery conviction. In exchange for admission of the probation violation, the judge who accepted the plea approved the terms providing that no finding would be made as to other allegations of probation violation, defendant would receive a diagnostic study, and he would not be sentenced to state prison. The diagnostic report was filed, and recommended a prison sentence. The judge read and considered the report, as well as the supplemental probation reports, and then sentenced defendant to prison. Neither the prosecutor nor the deputy public defender attending the sentencing proceedings had appeared when the original bargain was made, and no one reminded the judge that the sentence was contrary to the plea bargain. On appeal, the parties agreed that the bargain had been violated. Our opinion addressed only the question of the proper remedy, and held that defendant should be permitted to withdraw his admission of probation violation and to enter a new plea to that charge. (*Id.,* at p. 673.) The majority opinion found that the rationale of *Johnson* was controlling "because ordering specific performance would prevent the trial court from exercising its sentencing discretion, forcing the court to impose a sentence it expressly rejected as inappropriate." (*Id.,* at p. 671.)

Unlike *Johnson* and *Calloway,* specific enforcement in this case would not bind the trial judge to a disposition that he considered inappropriate, nor otherwise impinge upon his sentencing discretion. Indeed, enforcement would promote informed exercise of that discretion by providing the judge with further information with which to make an appropriate sentencing decision. (Cf. *People* v. *Black* (1982) 32 Cal.3d 1, 6 [184 Cal.Rptr. 454, 648 P.2d 104].) The court would not be restrained from sentencing defendant to a term in state prison contrary to an agreement or the judge's discretion because the bargain itself provided for up to a four-year prison sentence.

Neither does this case raise the concern expressed in *Kaanehe,* that specific enforcement would be inadequate to remedy the harm caused by the violation. To the extent that any action will undo the harm in this type of case, specific enforcement is the most effective method of meeting the goal of·providing a remedy.

The Attorney General argues that the diagnostic study was "merely the procedure leading to the promised concurrent sentence," thus not really a term or condition of the plea bargain. This contention is not supported by the record. The only reasonable interpretation of the dialogue between the judge and the defendant is that the court made the diagnostic study a term of the bargain.

■ We also reject the argument that the diagnostic study was "expressly waived" at the allocution when the court asked, "Is there any just or legal cause why sentence should not now be pronounced?" and defendant responded, "No."

At the time of the proceedings in question, defendant had a right to the referral for diagnostic study because it was one of the terms of the bargain specifically agreed to by the People and approved by the court in exchange for defendant's guilty plea. That study was one of the privileges that defendant had bargained for in exchange for his plea of guilty and waiver of his constitutional rights.[5] Of course, there can be no waiver of a constitutional right absent "an intentional relinquishment or abandonment of a known right or privilege." (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed.2d 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357].) No less should a court presume from mere silence that defendant is waiving implementation of the consideration that induced him to waive his constitutional rights. Finding a waiver under the circumstances of this case would undercut the requirement that defendant's waiver of constitutional rights be intelligently made.[6]

---

[5]In pleading guilty, defendant waived inter alia: His privilege against self-incrimination; his right to jury trial; and his right to confront his accusers. (*In re Tahl* (1970) 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449]; *Boykin* v. *Alabama, supra,* 395 U.S. 238, 243 [23 L.Ed.2d 274, 279, 89 S.Ct. 1709].)

[6]See *Broken Plea Bargains, supra,* 66 Cal.L.Rev. at pages 501-512.

Moreover, the mere silence of defendant in response to the allocution does not meet the normal requirements of a waiver. A waiver may occur by an intentional relinquishment or as the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished (*Crest Catering Co.* v. *Superior Court* (1965) 62 Cal.2d 274, 278 [42 Cal.Rptr. 110, 398 P.2d 150]), "and the waiver must be the result of a voluntary act implying the abandonment of the right or privilege (*Chase* v. *National Indemnity Co.* (1954) 129 Cal.App.2d 853, 858 [278 P.2d 68])." (*Beasley* v. *Municipal Court* (1973) 32 Cal.App.3d 1020, 1028 [108 Cal.Rptr. 637].) Thus, some affirmative expression or conduct by the defendant acknowledging relinquishment of the bargained for term is essential before we could find that he had waived his right to that term. Mere silence or acquiescence is insufficient to extinguish the bargained for term underlying defendant's waiver of constitutional rights.

The Attorney General attempts to bolster his assertion that defendant waived his right to a diagnostic study by citing *In re Van Heflin* (1976) 58 Cal.App.3d 131 [128 Cal.Rptr. 257]. Nothing in *Van Heflin,* however, compels the finding of a waiver in this case. In *Van Heflin,* defendant sought relief by striking from the abstract of judgment reference to a prior felony conviction. At the time of oral pronouncement of judgement and sentence, the court requested and received from the defendant a waiver of formal arraignment for judgment. The court made no mention of an admitted prior felony conviction, but the minute order of judgment did refer to the prior felony conviction. Based on the rule of *People* v. *Mesa* (1975) 14 Cal.3d 466, 472 [121 Cal.Rptr. 473, 535 P.2d 337], that the trial judge must make it clear if the defendant is being sentenced as a prior offender, the *Van Heflin* court struck the reference to the prior felony conviction. The court noted the failure of the People to object to the court's failure to make an express finding on the prior conviction, and observed that the court's minutes were not later subject to change or modification by the trial court. No such limitation extends to an appellate court's power to remedy violation of a plea agreement that was explicitly approved by the trial judge on the record.

Finally, the Attorney General suggests that if the court erred in failing to provide a diagnostic study, such error was harmless, citing *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. In our view, the harmless error test is inapplicable to a situation involving failure to fulfill the terms of a plea bargain. Defendant's entitlement to the benefit of his bargain cannot be predicated on the assumption that violation of the bargain must result in some measurable detriment. Because a court can only speculate why a defendant would negotiate for a particular term of a bargain, implementation should not be contingent on others' assessment of the value of the term to defendant.

In addition, this court can only guess what the presentence report would recommend. To conclude that the error was harmless, we would have to assume either that the report would recommend the same or greater sentence as defendant received, or that the judge would have imposed the same sentence despite a recommendation for a lesser sentence.

Moreover, the concept of harmless error only addresses whether the defendant is prejudiced by the error. However, in the context of a broken plea agreement, there is more at stake than the liberty of the defendant or the length of his term. "At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice . . . . " *(United States* v. *Carter* (4th Cir. 1972) (en banc) 454 F.2d 426, 428; see also *People* v. *Calloway, supra,* 29 Cal.3d at p. 680 (dis. opn. of Bird, C. J.). We conclude that the *Watson* test is inapplicable to this case.

Defendant's release from prison creates unusual circumstances regarding the appropriate disposition on remand. A diagnostic study at this stage of the proceedings is of slight utility. However, alternatives to the sentence imposed were available to the trial court, and imposition now of a lesser sentence could affect defendant's current parole status. Therefore, unless defendant does not choose to be resentenced, the trial court is directed to order that a diagnostic study be prepared and to resentence the defendant. (See *In re Cortez* (1971) 6 Cal.3d 78, 79, 89 [98 Cal.Rptr. 307, 490 P.2d 819].)

The conviction is affirmed, the judgment is modified to vacate the sentence, and the cause is remanded with directions to determine the appropriate disposition consistent with the views expressed in this opinion.

Bird, C. J., Mosk, J., Richardson, J., Reynoso, J., Grodin, J.,* and Feinberg, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.