[No. H034868. Sixth Dist. Mar. 30, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
SOMNANG KIM, Defendant and Appellant.

1356

**Counsel**

Dallas Sacher, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Linda M. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUSHING, P. J.**—In what might serve as a monument to our "Byzantine" sentencing law (*People v. Velasquez* (1999) 69 Cal.App.4th 503, 505 [81 Cal.Rptr.2d 647]), we are called upon to decide how many lifetimes a defendant can be sentenced to spend in prison based upon a plea agreement calling for him to spend only one. We hold that where a criminal defendant enters a guilty plea on the understanding that he will serve one lifetime in prison, he cannot be sentenced to serve two or more lifetimes without first being given an opportunity to withdraw his plea. Because defendant Somnang Kim was sentenced to several lifetimes without being offered that choice, we will reverse the judgment and remand with directions.

### BACKGROUND

In late 2003, defendant and two fellow gang members, Savin Sam and Bunnrith Pech, engaged in several shooting rampages in which each of them carried and discharged a firearm. In total they shot at 15 people, killing three of them. A few months earlier defendant had shot at two other people. All three men were charged by indictment with three counts of murder and, in defendant's case, 13 counts of attempted murder, plus three counts of assault with a firearm.[1] The indictment exposed all three to the death penalty by charging two special circumstances: that they committed the murders as active participants in a criminal street gang (Pen. Code, § 190.2, subd. (a)(22)), and that each was guilty of multiple murders (Pen. Code, § 190.2, subd. (a)(3)). Numerous noncapital sentence enhancements were charged, including that each defendant personally inflicted serious injury with a firearm (Pen. Code, § 12022.53 (§ 12022.53), subd. (d)).

All three defendants agreed to plead guilty on the understanding that the prosecution would abandon its efforts to secure a death sentence and that they would be sentenced instead to life without possibility of parole. At sentencing, however, the prosecutor urged the court to adopt the probation officer's recommendation, which was, in defendant's case, a life-without-parole term consecutive to three additional terms: life with possibility of parole, 400 years to life, and 29 years eight months. Defendant's attorney objected that such a sentence would violate the plea bargain as well as the admonitions the court gave to defendant when he entered his plea, and that it constituted cruel and unusual punishment. The court nonetheless imposed the recommended sentence. At no time did it indicate whether it was acting in conformity with the

---

[1] Two of the assault counts arose from the same conduct as two of the attempted murder counts. These assault counts were dismissed after defendant pled guilty to the attempted murder counts.

terms of the bargain as it understood them, or intended instead to deviate from those terms. In any event it did not offer defendant an opportunity to withdraw his plea.

Sam did not appeal. Pech filed a notice of appeal and opening brief, but then dismissed his appeal. Only Kim's appeal is now before us.

## DISCUSSION

The questions presented are whether the sentence imposed by the trial court violated the plea agreement and, if so, what to do about it. The basic principle is that "[w]hen a guilty plea is entered in exchange for specified benefits such as . . . an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement. The punishment may not significantly exceed that which the parties agreed upon." (*People v. Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861].) This is a rule of constitutional stature, implicating due process concerns. (*Ibid.*, citing *People v. Mancheno* (1982) 32 Cal.3d 855, 860 [187 Cal.Rptr. 441, 654 P.2d 211].) The rule is not offended by minor deviations from the bargain; to warrant relief, the variance must be " 'significant' in the context of the plea bargain as a whole." (*Walker*, at p. 1024.)

Defendant contends that the sentence here violated the plea agreement, and respondent concedes the point, stating that it "significantly deviated from the agreed-upon sentence" and marked "a substantial deviation from the agreed-upon plea." We cannot help but detect in this premise a tinge of the absurdity inherent in multiple consecutive life sentences. For a sentence to violate a plea bargain, it must impose a "punishment more severe" than whatever the defendant agreed to. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1221 [54 Cal.Rptr.3d 887].) In what sense is imprisonment for multiple lifetimes—in this case at least five—"more severe" than imprisonment for one lifetime?[2] By granting defendant only one life, nature provides an absolute invulnerability to such supernumerary sentences. To sentence him to multiple lifetimes in prison is to impose a punishment he literally cannot bear.

---

[2] We arrive at five lifetimes by focusing on the minimum time to parole eligibility. The three terms of imprisonment admitting the possibility of parole would require confinement for at least 436 years: 29 years on the determinate sentence, 400 years on the 400-year-to-life sentence, and seven years on the additional life-with-parole sentence (see Pen. Code, § 3046, subd. (a)). Defendant would thus have to serve well over five normal lifetimes before even being considered for parole. (See Pen. Code, § 2933.2 [no custody credit on murder sentence].) But of course this calculus ignores the life-without-parole term, which—once we suppose that he might live indefinitely—is a sentence, in effect, for eternity. From this perspective, defendant was sentenced to five lifetimes plus eternity.

We recognize that such a sentence serves at least in part as an attempt to express the community's sense of outrage and condemnation toward defendant's conduct and, perhaps, his person. But to respond to a justifiable sense of outrage and injury by pronouncing punishments that cannot actually be inflicted might appear to some a potentially counterproductive expression of impotence, like kicking a tree root over which one has tripped.

This does not mean that we reject respondent's concession of error. In purely arithmetic terms there is a very considerable difference between a life sentence and a sentence of several lifetimes. The Supreme Court itself has detected a potentially different "practical effect" between a life-without-parole sentence and a sentence of life without parole plus 25 years to life. (*People v. Shabazz* (2006) 38 Cal.4th 55, 70, fn. 9 [40 Cal.Rptr.3d 750, 130 P.3d 519].) It follows that the sentence imposed deviated significantly from the plea agreement.

█ Plea bargains are generally governed by a specialized form of the law of contracts. (See *People v. Scheller* (2006) 136 Cal.App.4th 1143, 1152 [39 Cal.Rptr.3d 447], quoting *People v. Renfro* (2004) 125 Cal.App.4th 223, 230 [22 Cal.Rptr.3d 680] [" 'As a general rule, a plea bargain approved by the court is enforceable under contract principles.' "]; *People v. Shelton* (2006) 37 Cal.4th 759, 767 [37 Cal.Rptr.3d 354, 125 P.3d 290].) For present purposes, two principles predominate. First, like the parties to a private contract, the state and the defendant are bound by the agreement as between themselves. (*People v. Daugherty* (1981) 123 Cal.App.3d 314, 321 [176 Cal.Rptr. 500] ["both the prosecutor and the defendant are entitled to the benefit of the bargain they have struck"].)

Second, however, the sentencing court is *not* bound by the bargain, but is empowered to disapprove it and deny it effect, at least so long as the parties can be restored to their original positions. This principle is codified as part of an admonition the court is required to give when a plea bargain is placed before it, i.e., it must "inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so."[3] (Pen. Code, § 1192.5.) Implicit in this language "is the premise that the court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea." (*People v. Johnson* (1974) 10 Cal.3d 868, 873 [112 Cal.Rptr. 556, 519 P.2d 604]; see *People v. Kaanehe* (1977) 19 Cal.3d 1, 13 [136 Cal.Rptr. 409, 559 P.2d 1028] ["a defendant should not be

---

[3] So far as the record shows, the court below never gave this admonition to defendant. Neither party contends that this omission has any bearing on the issues before us.

entitled to enforce an agreement . . . calling for a particular disposition against the trial court absent very special circumstances"]; *People v. Stringham* (1988) 206 Cal.App.3d 184, 195 [253 Cal.Rptr. 484] [referring to "the court's near-plenary power granted by [Penal Code] section 1192.5 to retract approval of a plea bargain"]; *In re Falco* (1986) 176 Cal.App.3d 1161, 1165 [222 Cal.Rptr. 648] ["The court's initial approval is not binding and may be withdrawn at the time of sentencing . . . ."]; *People v. Superior Court (Gifford)* (1997) 53 Cal.App.4th 1333, 1338 [62 Cal.Rptr.2d 220] ["Such withdrawal is permitted, for example, . . . where the court becomes more fully informed about the case [citation], or where, after further consideration, the court concludes that the bargain is not in the best interests of society. [Citation.]"].)

Some potential for confusion appears in broad statements to the effect that once a trial court has "accepted" a plea bargain, it too is "bound" by it. (See, e.g., *People v. Segura* (2008) 44 Cal.4th 921, 930 [80 Cal.Rptr.3d 715, 188 P.3d 649] *(Segura)* ["Acceptance of the agreement binds the court and the parties to the agreement."]; *People v. Ames* (1989) 213 Cal.App.3d 1214, 1217 [261 Cal.Rptr. 911] ["a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain"]; cf. *Segura, supra*, at pp. 931–932 ["the trial court may approve or reject the parties' agreement, but the court may not attempt to secure such a plea by stepping into the role of the prosecutor, nor may the court effectively withdraw its approval by later modifying the terms of the agreement it had approved"].) These pronouncements are sometimes marked by an unfortunate vagueness about the factual context in which they apply, and most particularly the *time* at which the court becomes "bound" by the agreement. Taken out of context, they might suggest that the court surrenders its sentencing discretion the moment it accepts a negotiated plea. Such a view is of course irreconcilable with the statute and cases cited in the preceding paragraph. The statements mentioned here are best understood as only prohibiting the court from unilaterally modifying the terms of the bargain without affording—or after it has become impossible to afford—an opportunity to the aggrieved party to rescind the plea agreement and resume proceedings where they left off. Thus in *Segura, supra*, 44 Cal.4th 921 the defendant sought to avoid the immigration consequences of a conviction by modifying the agreed sentence after judgment had been entered and the sentence had been served. By this time, of course, it was impossible for the prosecution to rescind the plea bargain. In describing the trial court's powerlessness to modify the judgment, the Supreme Court could not have meant to suggest that it would have lacked such power on *timely* application—e.g., at sentencing—provided it offered the prosecutor an opportunity to rescind the agreement.

■   The code expressly reserves to the court the power to disapprove the plea agreement, provided the defendant is given the opportunity "to withdraw his or her plea if he or she desires to do so." (Pen. Code, § 1192.5.) This

provision seems to contemplate a situation where the court deviates from the agreement in a manner adverse to the defendant. The drafters may not have anticipated the situation, as in *Segura*, where the court departs from the agreement in a manner adverse to the prosecution. We can conceive of no reason to suppose that the prosecutor's assent to the agreement is any more binding on the court than the defendant's. Presumably the prosecutor is entitled to the same remedy as the defendant—withdrawal of assent to the plea agreement—but no more. However we need not plumb the depths of the question because we are concerned here with a deviation requested by the prosecution and adverse to defendant. In those circumstances the statute plainly entitled the court below to withdraw its approval and deviate from the agreed terms so long as it offered defendant an opportunity to withdraw his plea. This, however, the court failed to do. It therefore erred by imposing a sentence exceeding that to which defendant had agreed.

When an error of this type is established on appeal, relief may take any of three forms: a remand to provide the defendant the neglected opportunity to withdraw the plea; "specific performance" of the agreement as made (e.g., *People v. Mancheno, supra*, 32 Cal.3d 855, 859, fn. 1); or "substantial specific performance," meaning entry of a judgment that, while deviating somewhat from the parties' agreement, does not impose a "punishment significantly greater than that bargained for" (*People v. Walker, supra*, 54 Cal.3d 1013, 1027).

It does not appear that either specific performance or substantial specific performance is an option here. Specific performance would consist of modifying the judgment, or directing the trial court to modify it, by making the additional prison terms run concurrently rather than consecutively to the life-without-parole term. But ordering the entry of a specific sentence is only appropriate "when it will implement the reasonable expectations of the parties *without binding the trial judge to a disposition that he or she considers unsuitable* under all the circumstances." (*People v. Mancheno, supra*, 32 Cal.3d at p. 861, italics added.) Here the trial court may have been exercising its sentencing discretion when it imposed the additional terms.

Specific performance appears to be barred by another obstacle: the sentence to which the parties agreed is, on the present state of the pleadings, violative of the sentencing laws, because defendant's admission of an enhancement under section 12022.53, subdivision (d), triggers a *mandatory* consecutive 25-year-to-life sentence. Where such an enhancement is properly

pleaded and is admitted by the defendant, the governing statute denies the trial court the power to strike the enhancement (§ 12022.53, subd. (h)), but mandates that it impose the prescribed term (*id.,* subd. (j)) "unless an even greater enhancement-related punishment is legally available" (*People v. Chiu* (2003) 113 Cal.App.4th 1260, 1265 [7 Cal.Rptr.3d 193]). In sum, where the statute applies, it leaves the trial court no discretion to modify the punishment prescribed.[4] (See *People v. Martinez* (1999) 76 Cal.App.4th 489, 495 [90 Cal.Rptr.2d 517].)

■ Neither this court nor the trial court may lawfully impose a sentence not authorized by law. (See *People v. Brown, supra,* 147 Cal.App.4th 1213, 1228 [appellate court cannot direct entry of unauthorized sentence]; *People v. Velasquez, supra,* 69 Cal.App.4th 503, 505–506 [trial court could not a-chieve agreed maximum sentence of three years by imposing middle term of four years and "staying" one year].)[5] It follows that we cannot properly direct "specific performance" by modifying the judgment to eliminate the enhancement.

Nor can we avoid these difficulties, as respondent urges, by remanding with directions to run all of the additional terms concurrently *except* the consecutive 25-year-to-life term mandated by section 12022.53. This would produce a sentence of life without parole consecutive to a single term of 25 years to life. Such a sentence would achieve "substantial specific perfor-mance," according to respondent, because "[r]elative to the whole," adding a single life sentence "is not a significant deviation from the negotiated plea,

---

[4] Respondent cites *People v. Flores* (1971) 6 Cal.3d 305, 309–310 [98 Cal.Rptr. 822, 491 P.2d 406], where the Supreme Court achieved specific performance of a plea agreement by striking a firearms enhancement. (*Id.* at p. 310; see *People v. Hernandez* (2000) 22 Cal.4th 512, 523 [93 Cal.Rptr.2d 509, 994 P.2d 354].) The statute has been pointedly amended to preclude just such a remedy. Moreover *Flores* was greatly weakened as precedent in *People v. Calloway* (1981) 29 Cal.3d 666, 673 [175 Cal.Rptr. 596, 631 P.2d 30], where the court wrote that *Flores* preceded decisions expressing the court's "reluctance to order specific performance of repudiated plea bargains," and that it "assumed without analysis that specific performance . . . was the only appropriate remedy in that case."

[5] Both parties cite *People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569], which held a defendant *estopped* to challenge a sentence not conforming to statute on appeal, *after that sentence had been entered* in reliance on his negotiated plea. Here the sentencing court *refused* to enter the agreed-upon but noncompliant sentence, instead entering a compliant sentence to which the parties had not agreed. Thus the question is not whether we should leave an unauthorized sentence alone—on the theory that the defendant will not be heard to urge its invalidity—but whether we ourselves can *enter* an unauthorized sentence, or order the trial court to do so, with full awareness of its noncompliance with applicable statutory mandates. It is one thing to hold a party estopped to challenge a completed judicial action. It is quite another to for a court to deliberately perform an unauthorized act. Such a power, if it exists, threatens to corrode the rule of law every time it is exercised. We would resort to it, if ever, only as a last resort. The circumstances of this case do not appear to require such extreme measures.

especially considering [that] the maximum penalty included the death penalty and consecutive sentences exceeding 350 years to life." We find this assertion impossible to reconcile with respondent's concession, which we have accepted, that a sentence for many lifetimes deviates significantly from an agreement calling for a sentence of a single lifetime. Furthermore, if the trial court's failure to impose the agreed-upon sentence constituted an exercise of its reserved power to disapprove the plea bargain, we would be intruding on its discretion just as surely by lopping off all but one of the terms as by lopping them all off.

We recognize that a remand for further proceedings may produce serious difficulties should defendant elect to withdraw his plea. Foremost among these is the fact that his plea bargain was part of a "package deal" including his two codefendants.[6] When the trial court pronounced sentences imposing punishment beyond what defendants agreed to, codefendant Sam acquiesced immediately by failing to appeal. Codefendant Pech initiated an appeal, but dismissed it after filing an opening brief. As a result those two judgments are now final. Respondent asserts that Sam and Pech could be prejudiced by "los[ing] the opportunity to avoid the death penalty if the prosecution was to then move to vacate their guilty pleas based on the voiding of that important reciprocal condition." But this assumes that such a motion could properly be granted. Respondent cites no authority, and we have found none, authorizing the court to vacate a criminal judgment on prosecution motion after the judgment has become immune to direct attack. If the prosecution overcomes that hurdle, it will have to meet the inevitable objections that further proceedings against defendant's codefendants would violate the constitutional prohibition against being placed twice in jeopardy and would offend principles of res judicata. (See Cal. Const., art. I, § 15; Pen. Code, §§ 687, 1016, subds. 4, 5, 1017, subds. 3, 4, 1023, 1041, subds. 2, 3; *Gonzalez v. Municipal Court* (1973) 32 Cal.App.3d 706, 714 [108 Cal.Rptr. 612] ["a guilty plea is equivalent to a conviction and, *if allowed to stand*, it bars a subsequent prosecution for the same offense, and a plea of former conviction is good"]; 32 Cal.App.3d at p. 714, fn. 12 [distinguishing withdrawal of plea at sentencing hearing from situation where "sentence . . . has been pronounced and the judgment has been permitted to become final"].) These questions have not been briefed by the parties and are not properly before us. We mention them only to establish that the claimed prejudice to codefendants is far from certain.

---

[6] In spreading the agreement on the record the prosecutor said only, "This is a package deal." However during its admonitions to defendant the court explained, "Also, Mr. Kim, you need to realize that this is what we call a package deal which means that there are three of you, all three of you are going to have to plead guilty and admit the allegations. And if any one of the three of you do not do that then the death penalty would be put back on the table and all three of you proceed to trial."

Respondent also asserts, perhaps more colorably, that a withdrawal of defendant's plea would prejudice the prosecution. Respondent cites *In re Ibarra* (1983) 34 Cal.3d 277, 289, footnote 5 [193 Cal.Rptr. 538, 666 P.2d 980], where the court wrote that having one defendant plead guilty while another goes to trial exposes the prosecutor to the risk that "the defendant who pleads may become an adverse witness on behalf of his codefendant, free of jeopardy." Certainly this is a risk in any trial of a defendant in which his former codefendants are not joined. But the prosecutor had the means to avoid such a risk. Among the duties of a public prosecutor is to ensure that " 'a correct lawful sentence is imposed.' " (*People v. Velasquez, supra,* 69 Cal.App.4th at p. 507.) The present appeal, and any difficulty arising on remand would have been obviated had the prosecutor (1) ensured that the agreed-upon sentence was authorized by law; (2) conformed the pleadings to the agreed-upon sentence so that the latter would be authorized by law; or (3) reminded the court of its duty to offer defendant an opportunity to withdraw his plea before pronouncing a sentence not in conformity with the plea agreement. The prosecutor compounded these omissions by affirmatively urging the court to impose greater punishment than defendant agreed to.

However it is not inevitable that defendant will be given an opportunity to withdraw his plea, let alone that he will exercise it. On remand, it will be open to the prosecution to move to amend the indictment to omit the allegations triggering the mandatory additional sentence under section 12022.53. Assuming that motion is granted, it will then be up to the court to decide, once again, whether to approve and impose the agreed-upon sentence, or offer defendant an opportunity to withdraw his plea. Only if the court refuses to approve the agreed-upon sentence need defendant be offered such an opportunity. If matters come to that pass, however, the choice must be given to him. We see no other disposition of this matter that complies with all of the principles we have discussed.

### DISPOSITION

The judgment is reversed and remanded for resentencing. On remand, the court shall entertain a timely prosecution motion, if made, to amend the indictment by omitting the allegations giving rise to mandatory enhancements under section 12022.53. If no such motion is made, or is made and denied, the court shall offer defendant an opportunity to withdraw his plea. If the indictment is so amended, the court shall decide whether to adopt the agreed sentence of a single prison term of life without possibility of parole, all other prison terms to run concurrently. If the court adopts the sentence it shall enter a judgment imposing it. If the court does not adopt the agreed-upon sentence it

shall offer defendant an opportunity to withdraw his plea. If defendant chooses not to withdraw his plea, the court shall adopt a judgment imposing a sentence such as that imposed under the judgment from which this appeal was taken. If defendant chooses to withdraw his plea, the matter shall proceed as to him as if no plea had been entered.

Premo, J., and Elia, J., concurred.