Filed 11/6/15  P. v. Whitner CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040856 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1120584) |
| v. | |
| DONALD BENN WHITNER, | |
| Defendant and Appellant. | |

Defendant Donald Benn Whitner entered into a plea agreement in which he pleaded guilty to four counts of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)[1] – counts 1, 2, 3, and 5) and two counts of possession of a firearm by a felon (§ 12021, subd. (a)(1) – count 4 and 7).  Defendant also admitted that he personally used a handgun (§ 12022.53, subd. (b)) as to counts 2, 3, and 5 and had two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12), a prior serious felony conviction (§ 667, subd. (a)), and two prior prison commitments (§ 667.5, subd. (b)).  In exchange for defendant's pleas and admissions, one count of second degree robbery and the associated personal use of a handgun enhancement was dismissed.  After denying defendant's motion to dismiss a prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), the trial court sentenced defendant to 100

_____

[1]     All further statutory references are to the Penal Code.

years to life consecutive to 67 years four months in state prison. On appeal, defendant contends: (1) the trial court violated the terms of the plea agreement by sentencing him to a prison term that exceeded the maximum sentence under the agreement; and (2) the trial court abused its discretion when it denied his *Romero* motion. We reverse the judgment and remand for resentencing.

## I. Statement of Facts

In September 2011, defendant gave a note to a teller at the Bank of the West and indicated that he wanted $10,000. The teller gave him all of the money that she had.

On October 4, 2011, defendant went to a different branch of the Bank of the West and told a teller that he wanted $30,000. When she began to walk away, he lifted his shirt and revealed a semiautomatic handgun in his waist. After she and her supervisor put the money into a bag, defendant took the bag.

A week later, defendant told a teller at the U.S. Bank to give him $50,000 and pulled out a handgun. The teller gave him the money.

## II. Discussion

### A. Violation of the Plea Agreement

Defendant contends, and the Attorney General concedes, that the trial court violated the terms of the plea agreement.

Pursuant to the terms of the plea agreement, the trial court advised defendant that he faced a maximum prison sentence of 140 years eight months to life. However, the trial court adopted the probation department's recommendation and sentenced defendant to a term of 100 years to life consecutive to 67 years four months in state prison.

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If

2

contractual language is clear and explicit, it governs. [Citation.]'" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello v. New York* (1971) 404 U.S. 257, 262.) Here, the trial court violated the terms of the plea agreement by imposing a prison term that exceeded the maximum sentence under the plea agreement by almost 27 years.

When a plea agreement is violated, courts may order specific enforcement or allow the defendant to withdraw his plea. (*People v. Mancheno* (1982) 32 Cal.3d 855, 861-862.) Relying on *People v. Kim* (2011) 193 Cal.App.4th 1355 (*Kim*), defendant argues that the matter should be "remanded for [the trial] court to either specifically enforce the bargain if it feels that would not impinge on its sentencing discretion or permit [him] to set aside his previously entered guilty plea to the charges and admission of the sentencing enhancements." In *Kim*, the defendant entered into a plea agreement in which he would serve a term of life without parole. (*Id.* at p. 1358.) However, the trial court violated the terms of the plea agreement by sentencing him to a life-without-parole term consecutive to three terms: life with the possibility of parole, 400 years to life, and 29 years eight months. (*Ibid.*) This court rejected specific enforcement of the plea agreement: "But ordering the entry of a specific sentence is only appropriate 'when it will implement the reasonable expectations of the parties *without binding the trial judge to a disposition that he or she considers unsuitable* under all the circumstances.' [Citation.] Here the trial court may have been exercising its sentencing discretion when it imposed the additional terms." (*Kim*, at p. 1362.) Similarly in the present case, it is not clear whether specific enforcement of the plea agreement would bind the trial court to a disposition that it considers unsuitable in the present case.

3

## B. *Romero* Motion

Defendant next contends that the trial court abused its discretion by failing to dismiss one of his prior strike convictions.

### 1. Prior Strike Convictions

In 2003, defendant was convicted of carjacking (§ 215) and second degree robbery (§§ 211, 212.5, subd. (c)).[2] The factual basis for the prior strike convictions is summarized in the probation report. The victim was looking for male prostitutes when he picked up defendant and codefendant Dominic Dickerson. Defendant and Dickerson directed the victim to drive to a location near a grocery store. When the three men exited the victim's vehicle, the victim thought that they were going to have sex. However, Dickerson pulled out a gun, cocked the hammer, and told the victim to "suck on this." He put the gun in the victim's mouth and told the victim to give him money. Both defendant and Dickerson took $700.00 and the victim's cell phone. They got into the victim's car and the victim ran away. Dickerson fired a shot at the victim as he ran away, but he missed. Defendant and Dickerson fled in the victim's car.

### 2. Procedural Background

Defendant brought a motion to dismiss one of his two prior strike convictions. His motion summarized his background, a psychological evaluation, the charged offenses, and his version of the events underlying his prior strike convictions. Defendant argued that the prior strike convictions were based on "the same act and same occurrence," and thus one of them should be vacated "in the furtherance of justice."

The prosecution opposed the *Romero* motion on the ground that "defendant's extremely dangerous and serious criminal conduct render[ed] him squarely within the spirit of the Three Strikes Law." The prosecution pointed out that defendant, who was 29 years old, had committed five felonies and six misdemeanors since 2002 in addition to

---

[2] This court has taken judicial notice of the probation report, which was filed on June 20, 2003, in *People v. Donald Benn Whitner* (case No. CC271090).

4

the six current felonies. The prosecution also noted that the severity of defendant's criminal conduct had escalated despite his increasing age and two significant prison sentences. The prosecutor relied on the probation report in case No. CC271090 to summarize the conduct involved in the prior strike convictions.

### 3. Analysis

"[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law . . . 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not presently been convicted of one or more serious felonies and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "A trial court abuses its discretion when the factual findings critical to its decision [on whether to strike a prior conviction] find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.)

Relying on *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*), defendant contends that the trial court abused its discretion when it failed to strike one of his prior convictions under section 1385. Defendant maintains that the record establishes that his two prior strike convictions were based on the same criminal act, that is, the forcible taking of multiple items of a single victim's property.

*Vargas*, *supra*, 59 Cal.4th 635 considered whether a defendant's "two prior convictions arising out of a single act against a single victim [could] constitute two strikes under the Three Strikes law." (*Id.* at p. 637.) In *Vargas*, the defendant had

5

previously been convicted of robbery and carjacking, which were "based on the same act, committed at the same time, and against the same victim." (*Id.* at p. 638.) In determining whether the defendant's case fell into the rare category in which "no reasonable person would disagree that defendant fell outside the spirit of the Three Strikes law," *Vargas* discussed a related issue which was presented in *People v. Benson* (1998) 18 Cal.4th 24 (*Benson*). (*Vargas*, at p. 642.) In *Benson*, the defendant's two prior strike convictions were based on an incident in which the defendant returned to a neighbor's apartment to retrieve his keys, grabbed his neighbor, forced her to the floor, and repeatedly stabbed her. (*Vargas*, at p. 642.) After the defendant in *Benson* was convicted of residential burglary and assault with intent to commit murder, the trial court stayed one of the convictions pursuant to section 654 since both offenses were based on the same course of conduct. (*Vargas*, at p. 642.) When the defendant later committed another felony, it was charged as a third strike. (*Ibid.*) *Benson* rejected the defendant's argument that he had only one qualifying prior strike conviction because punishment had been stayed for one of the prior convictions. (*Vargas*, at p. 642.)

*Vargas* also quoted a footnote in *Benson*, which stated: " 'Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which *two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors.*' (*Benson*, *supra*, at p. 36, fn. 8, italics added.)" (*Vargas*, *supra*, 59 Cal.4th at p. 643.) *Vargas* acknowledged that the hypothetical set forth in this footnote was presently before the court. (*Id.* at p. 645.) Relying on language in the ballot argument in favor of the "Three Strikes" initiative, *Vargas* concluded that "the voting public would reasonably have understood the 'Three

6

Strikes' baseball metaphor to mean that a person would have three chances—three swings of the bat, if you will—before the harshest penalty could be imposed. The public also would have understood that no one can be called for two strikes on just one swing. Permitting the trial court below to treat defendant's 1999 robbery and carjacking convictions as separate strikes—despite the fact they were based on a single criminal act—would do just that, and thus contravene the voter's clear understanding of how the Three Strikes law was intended to work. Given the obvious twinning of the language used in the legislative version of the Three Strikes law, we discern no different intent with that version of the law." (*Vargas*, at pp. 645-646.)

*Vargas* also disagreed with the Attorney General's position that the electorate could have found that defendants who have violated more than one criminal statute pose a higher risk to public safety than those who have not. (*Vargas*, *supra*, 59 Cal.4th at p. 646.) *Vargas* reasoned: "We would agree had the offender committed more than one act, whether separately or during a continuous course of conduct, as in *Benson*, *supra*, 18 Cal.4th 24. As we stated in *Benson*, 'the electorate and the Legislature rationally could—and did—conclude that a person who committed additional violence in the course of a prior serious felony (e.g., shooting or pistol-whipping a victim during a robbery, or assaulting a victim during a burglary) should be treated more harshly than an individual who committed the same initial felony, but whose criminal conduct did not include such additional violence.' [Citation.] But where, as here, an offender committed but a single act, we disagree she poses a greater risk to society merely because the Legislature has chosen to criminalize the act in different ways. The Legislature is free to criminalize an act in multiple ways, but that it has done so does not of itself make an offender more blameworthy, or more dangerous, within the meaning of the Three Strikes law." (*Id.* at pp. 646-647.) *Vargas* noted that *Benson* "involved multiple criminal *acts* (albeit committed in a single course of conduct) and not, as here, multiple criminal *convictions* stemming from the commission of a single act." (*Vargas*, at p. 648.) Thus, *Vargas* held

7

that the trial court was required to dismiss one of the prior strike convictions. (*Id.* at p. 649.)

The present case is more similar to *Benson* than *Vargas*. Here, defendant's prior strike convictions did not arise out of a "single act" within the meaning of *Vargas*. While the victim, defendant, and Dickerson were outside the victim's vehicle, Dickerson put a gun in the victim's mouth and demanded money. Both defendant and Dickerson took the victim's money and cell phone. Defendant and Dickerson then entered the victim's car. As the victim ran away, Dickerson fired a shot at the victim. Thus, the act of taking the victim's money and cell phone at gunpoint was distinct from the act of firing the gun at the victim as the car was taken. Since there was substantial evidence to support the trial court's implied finding that there were separate acts of violence, the trial court was not required to dismiss one of the prior strike convictions.

Defendant's reliance on *People v. Dominguez* (1995) 38 Cal.App.4th 410 is misplaced. *Dominguez* concluded that carjacking and a robbery constituted " 'the same act' " where the defendant "placed the cold metallic object to the back of the victim's neck and demanded 'everything he had . . . .' Simultaneously, the victim handed over his jewelry and van by handing over the jewelry and fleeing the van." (*Id.* at pp. 419-420.) In contrast to *Dominguez*, here, though the robbery and carjacking occurred close in time, there were separate acts of violence against the victim.

Defendant also argues that the trial court did not have the opportunity to consider whether his prior strike convictions were based on the same act, because his sentence was imposed almost five months before *Vargas*, *supra*, 59 Cal.4th 635. However, defendant argued in his sentencing memorandum that his two prior strike convictions constituted the same act and referenced *Benson*, *supra*, 18 Cal.4th 24. Prior to ruling on the motion to dismiss one of the prior strike convictions, the trial court stated that it had read and considered defendant's sentencing memorandum. Thus, we reject defendant's argument.

8

### III.    Disposition

The judgment is reversed and remanded for further proceedings.  The trial court is directed to decide whether to impose a maximum term of no more than 140 years eight months.  If the trial court does adopt such a sentence, it shall enter a judgment imposing it.  If the trial court does not adopt a sentence pursuant to the plea agreement, it shall offer defendant the opportunity to withdraw his plea.  If defendant chooses to withdraw his plea, the matter shall proceed as if no plea had been entered.

_____
Mihara, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Grover, J.