Filed 4/2/13  P. v. Alvarez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046490 |
| v. | (Super. Ct. No. 08HF1565) |
| BOBBY ANGEL ALVAREZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Reversed and remanded with directions.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

Defendant Bobby Angel Alvarez appeals from the judgment of conviction entered against him after a jury trial. Before trial, the prosecution had offered defendant a negotiated disposition by which defendant would plead guilty to an assault offense and, inter alia, be placed on formal probation under terms and conditions including that he serve 365 days in jail. Defendant accepted the prosecution's offer, but the trial court refused to accept the agreement.

We reverse. Based on the record before us and for the reasons we explain in detail, the trial court erred by not accepting the negotiated disposition agreement reached by defendant and the prosecution. The only suitable remedy is specific enforcement of defendant's written negotiated disposition agreement with the prosecution; therefore, on remand, we direct the trial court to accept that agreement.

## PROCEDURAL BACKGROUND

Defendant and codefendant Richard Anthony Fuentez III (Fuentez) were charged in an information with (1) assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1)[1] (count 1); (2) assault by means of force likely to produce great bodily injury in violation of section 245, subdivision (a)(1) (count 2); and (3) battery inflicting serious bodily injury in violation of section 243, subdivision (d) (count 3). Defendant alone was charged in the information with possession of a deadly weapon, namely, brass knuckles in violation of former section 12020, subdivision (a)(1) (count 4). As to counts 1 and 2, the information alleged, pursuant to section 12022.7, subdivision (a), and within the meaning of sections 1192.7 and 667.5, defendant and Fuentez personally inflicted great bodily injury on Shane Kral, who had not been an

---

[1] All further statutory references are to the Penal Code.

2

accomplice during the commission and attempted commission of those offenses.[2] The charges arose out of a fight in a restaurant and bar.

On the date set for trial, defendant and Fuentez agreed to the prosecution's offer in which defendant and Fuentez would each plead guilty to a single count of assault, and be placed on probation under certain terms and conditions. (Defendant's negotiated disposition agreement was conditioned on, inter alia, his serving 365 days in jail.) The trial court started to take their pleas, reviewing with defendant and Fuentez the rights they were giving up by pleading guilty as set forth in the completed *Tahl*[3] forms they had submitted to the court. Defendant's *Tahl* form, which sets forth his negotiated disposition agreement with the prosecution, is part of our record. The trial court confirmed with defendant the statement in his *Tahl* form, setting forth the factual basis for his plea, was a true statement. After the court confirmed with Fuentez the truth of the factual basis statement in his *Tahl* form, the court asked Fuentez, "how do you plead?" Fuentez responded, "[g]uilty, Your Honor." The court then stated, "[w]e are off the record."

Upon resuming proceedings on the record, the trial court asked Fuentez if he had any questions about what he was doing, and Fuentez said, "[n]o." The court also asked, "Mr. Fuentez, do you wish me to accept your plea of guilty?" Fuentez responded, "[y]es, Your Honor." The court then found a knowing, intelligent, voluntary waiver of Fuentez's constitutional rights and a factual basis for the plea. Fuentez waived arraignment and time for sentencing; the court, the prosecutor, and Fuentez's counsel

---

[2] Although not relevant to the issue presented in this appeal brought only by defendant, the information also alleged, pursuant to section 667.5, subdivision (b), that Fuentez had suffered two prior convictions for each of which he served a separate prison term. The information did not allege any prior conviction enhancement allegations as to defendant.

[3] *In re Tahl* (1969) 1 Cal.3d 122.

3

discussed Fuentez's possible sentence. The court again stated they were going "[o]ff the record."

When the proceedings went back on the record, the court adjourned proceedings for the day without returning to the plea of defendant or Fuentez.

The following morning, Fuentez informed the trial court that he had changed his mind and wished to go to trial on the charged offenses against him. The court did not then address the status of defendant's plea, but began addressing pretrial issues. The court granted defendant's counsel's request to "lay a record as to our off-the-record discussions." Defendant's counsel asserted that notwithstanding the package nature of the original negotiated disposition agreements, the prosecution had agreed to offer defendant alone the same negotiated disposition agreement it had offered defendant before Fuentez declined the negotiated disposition agreement offered to him. The court confirmed defendant's counsel's statement that the court would not accept a negotiated disposition agreement between the prosecution and defendant alone. According to the court, such an agreement would have to also include Fuentez for court approval.

A jury was selected the following day. The jury found defendant guilty on all four counts, and found that defendant had personally inflicted great bodily injury on Kral in the commission of counts 1 and 2 as alleged in the information. The jury found Fuentez not guilty as to each of the counts charged against him.

The trial court imposed a total prison term of six years eight months, but suspended execution of that sentence. The court placed defendant on formal probation for five years, conditioned on, inter alia, defendant serving 365 days in jail. Defendant appealed.

4

Defendant's sole contention in this appeal is that the trial court erred by rejecting the negotiated disposition agreement defendant had reached with the prosecution. For the reasons we will explain, we agree with defendant.

## I.

### GOVERNING LEGAL PRINCIPLES AND STANDARD OF REVIEW

"Plea negotiations and agreements are an accepted and 'integral component of the criminal justice system and essential to the expeditious and fair administration of our courts.' [Citations.] Plea agreements benefit that system by promoting speed, economy, and the finality of judgments." (*People v. Segura* (2008) 44 Cal.4th 921, 929.) "[T]he process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court.'" (*Id.* at pp. 929-930.) The trial court's approval "'is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution.'" (*Id.* at p. 930.)

"[T]he trial court may decide not to approve the terms of a plea agreement negotiated by the parties. [Citation.] If the court does not believe the agreed-upon disposition is fair, the court 'need not approve a bargain reached between the prosecution and the defendant, [but] it cannot change that bargain or agreement without the consent of both parties.'" (*People v. Segura*, *supra*, 44 Cal.4th at p. 931.)

"In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes. [Citation.] For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society [citation]; as recognized by both the Legislature and the judiciary, the trial

court may not arbitrarily abdicate that responsibility." (*In re Alvernaz* (1992) 2 Cal.4th 924, 941.) "For example, in *People*[ *v.*] *Orin*[ (1975)] 13 Cal.3d [937,] 943-944, [the Supreme Court] held that the underlying purpose of the statutory requirements governing dismissal of counts under section 1385 was to protect the public interest against 'improper or corrupt dismissals,' and to impose a purposeful restraint upon the exercise of judicial power." (*Ibid*.)

The United States Supreme Court recently reiterated the importance of the plea bargaining process in our judicial system in *Missouri v. Frye* (2012) 566 U.S. __, __ [132 S.Ct. 1399, 1407], stating: "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours 'is for the most part a system of pleas, not a system of trials,' [citation], it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. 'To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system.' [Citations.] In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant."[4] The United States Supreme Court further stated: "To note the prevalence of plea bargaining is not to criticize it. The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and

---

[4] The United States Supreme Court noted that 97 percent of federal convictions and 94 percent of state convictions are the result of guilty pleas. (*Missouri v. Frye*, *supra*, 566 U.S. at p. __ [132 S.Ct. at p. 1407].)

receive more favorable terms at sentencing means that a plea agreement can benefit both parties." (*Id.* at p. __ [132 S.Ct. at p. 1407].)[5]

## II.

### DETAILED CHRONOLOGY OF HEARINGS ADDRESSING THE PROSECUTION'S AND DEFENDANT'S NEGOTIATED DISPOSITION AGREEMENT.

### A.

### *Pretrial Hearings on Defendant's Negotiated Disposition Agreement*

During the hearing on November 29, 2011, the date set for trial, the court addressed the prosecution's offers for negotiated disposition agreements that had been extended to Fuentez and defendant. Fuentez initially informed the court that he was going to reject the offer. He explained he had "uncertainties about the restitution hearing" because he did not "know what [he]'ll end up paying."

The trial court then asked defendant whether he wished to accept the prosecution's offer. Defendant stated he decided to accept the prosecution's offer. The court told defendant to "[f]ill out the forms."

That same day, a *Tahl* form, signed by defendant, defendant's counsel, and the prosecutor, was filed in the trial court. The *Tahl* form stated defendant agreed to plead guilty to one count of assault with a deadly weapon in violation of section 245, subdivision (a)(1) and be sentenced to three years' formal probation with terms and conditions including he serve 365 days in jail; the prosecutor agreed to dismiss the

---

[5] The United States Supreme Court, quoting a law review article, further stated: "'[Defendants] who do take their case to trial and lose receive longer sentences than even Congress or the prosecutor might think appropriate, because the longer sentences exist on the books largely for bargaining purposes. This often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial.'" (*Missouri v. Frye*, *supra*, 566 U.S. at p. __ [132 S.Ct. at p. 1407].)

remaining charges and enhancements. (A copy of defendant's *Tahl* form is included in the clerk's transcript at pages 175 through 182.)

That afternoon, the trial court acknowledged on the record that both defendant and Fuentez had submitted *Tahl* forms to the court.[6] The court further stated, "the law requires I go over these with you." The court proceeded to go over certain rights in the *Tahl* form with defendant and Fuentez. Each stated his understanding of the rights he would be giving up by pleading guilty in accordance with his respective negotiated disposition agreement.

The trial court then asked Fuentez how he wished to plead to count 2, assault by force likely to produce great bodily injury. Fuentez responded, "[g]uilty, Your Honor." Fuentez's counsel joined in Fuentez's waiver. The court stated it found "a knowing, intelligent, voluntary waiver of Mr. Fuentez's constitutional rights" and found a factual basis for the plea. Following off-the-record discussions and a brief discussion of Fuentez's possible sentence—without an explanation on the record—the trial court abruptly concluded the hearing for the day, saying, "[w]e're done. Sorry. This shouldn't be this hard. Gentlemen, you're ordered to return back to this court 9:15 tomorrow morning. Regrettably, we have not ordered jurors, but we're going to see what's going to happen tomorrow morning at 9:15."

The following morning, on November 30, 2011, the trial court asked Fuentez: "[T]he court's offer to you is that I will accept this plea if you will agree to probation with terms and conditions of probation if you were to pay off the court-ordered criminal restitution and that probation would terminate. [¶] Do you understand that, sir?" Fuentez answered he understood but was not willing to accept the offer. After confirming Fuentez's understanding that he was risking prison time by rejecting probation, the court started discussing jury selection and other pretrial matters.

---

[6] Fuentez's *Tahl* form is not included in our record.

8

Defendant's counsel then raised the issue of the status of defendant's negotiated disposition agreement and the trial court granted defendant's counsel's request to be given the opportunity to create "a record as to [the] off-the-record discussions" that had occurred on that issue. The following colloquy shows defendant's counsel confirmed with the court that the prosecution's negotiated disposition offer to defendant remained on the table, notwithstanding Fuentez's decision to go to trial,[7] that defendant accepted the prosecution's offer, and that the court rejected the negotiated disposition agreement:

"[Defendant's counsel]: It's my understanding that the People had offered my client an opportunity to sever himself from the case and accept the deal as we understood it to be, which was a year in county jail with certain terms and conditions. It is the court's belief that the case should not be severed, that the court wouldn't accept my client to accept the deal without having the co-defendant, Mr. Fuentez; is that correct?

"The Court: Correct. I said I would not hold it against your—your client obviously, but that I was not inclined to, on the day of trial, sever a case like this.

"[Defendant's counsel]: Very well. Just in terms of a trial task for my client obviously being forced to go to trial, I suspect that the court would—

"The Court: Your client can plead guilty anytime he wants. I'm not saying he cannot plead guilty. I'm saying I'm not going to accept a plea bargain on this case.

"[Defendant's counsel]: Correct. But pleading guilty would mean that he would have to obviously plead guilty to the sheet to the court, which would obviously require him to plead to two strikes, which is not—which he's not interested in doing.

"The Court: Okay.

---

[7] The prosecutor was present in court during this discussion and did not object to defendant's counsel's statements regarding the status of the prosecution's offer to defendant. In the respondent's brief, the Attorney General acknowledges, "it appears the prosecutor ultimately agreed to allow [defendant] to enter the plea individually."

9

"[Defendant's counsel]: But—but I hope, the court for sentencing purposes, if he's found guilty, the court would not impose a sentence greater than what he would have accepted.

"The Court: I'm not making that commitment, sir. The law does not require I make that commitment.

"[Defendant's counsel]: Okay. Well, just for the record, my client would have taken the deal. Obviously, he doesn't want to take two strikes with the court.

"The Court: Okay. Noted, sir. [¶] I believe yesterday the defendant, Mr. Fuentez, had entered a plea. The court is going to set aside those pleas at this time, and there will be no entry of that plea. The People are in no way to mention any type of admission that occurred by the factual basis of either defendant."

The court concluded the hearing by scheduling jury selection on the following morning.

On the following morning, December 1, defendant's counsel again raised the subject of the trial court's rejection of defendant's negotiated disposition agreement as follows:

"[Defendant's counsel]: Your Honor, can I just—yesterday when we had our chambers discussion about the proposed disposition that the court rejected, I didn't really get a chance to lay my specific objection. I feel that I need to preserve that for appellate purposes. May I?

"The Court: You may.

"[Defendant's counsel]: Essentially I understand that judicial approval is a condition present [*sic*] to the court accepting our plea bargain. It's my understanding that the court did not want to accept my client's disposition with the People without having it been a package deal. Just for the record, I want to object that I do believe that that refusal for the court to accept our terms—it just appeared it wasn't the terms of our deal. It was the issue, but rather having both parties accept that.

10

"The Court: It was also your client's reluctance to enter into the plea agreement that your client several times paused, needed to talk to you to go through it. I was not prepared to find a knowing, intelligent, voluntary waiver of your client at that point. Then once the deal further fell apart, I then became very reluctant. In fact, I'm relieved. I wasn't sure that your client was fully and completely in agreement to do that, that—let me finish. [¶] Whenever there is a situation of a package deal, there always is the potential. I'm always mindful of this of the coercive nature that not only is it in my best interest, but if I don't do this, then my buddy doesn't get the deal and I feel bad because, you know, this could expose my buddy to more time, things like that. So I was examining all of that when I made my statement, not simply, you know, that both defendants accept or both defendants don't accept.

"[Defendant's counsel]: May I?

"The Court: You may.

"[Defendant's counsel]: With all due respect, I did not necessarily see the same issues that the court saw about my client's voluntariness of entering into the plea bargain. He did have questions for me about the issues of time that he'd have to serve, that were more to the specifics of the terms and conditions of the plea bargain. But obviously, you having seen thousands of cases and spent years on the bench, I assume correctly, the court has seen reluctance on behalf of clients, at least defendants to accept plea bargains. I wouldn't have joined in the court's opinions that my court—if my client had an unwillingness to enter into the plea bargain, it was not knowing, intelligent or voluntary. [¶] I understand the court's reasoning to us, now for the first time. It wasn't discussed yesterday, but just I respect your opinion and the rules that you have imposed. I just want to preserve the objection that I do believe that it violates my client's federal and state due process rights and based on that, I submit.

"The Court: Noted."

11

*The Court's and Defendant's Counsel's Discussion of Defendant's Written Negotiated Disposition Agreement at the Sentencing Hearing*

After the jury found defendant guilty on all four counts as charged and found the enhancement allegations true, the trial court imposed a sentence of six years eight months in prison but then suspended execution of that sentence and imposed five years' formal probation because of the "unusual circumstances" of the case. The unusual circumstances included that the offenses occurred during a bachelor party at a location defendant does not frequent, he is young and has "no significant prior record" (the information did not allege defendant had suffered any prior convictions), he has a strong support system, and he did not make excuses for his conduct. The court stated that this case was "unusual from the classic bar fight [where] someone gets really badly injured, you should be sent to prison." The court warned defendant, however, that he now had two strikes on his record. The terms and conditions of defendant's formal probation included defendant serving 365 days in jail.

Defendant's counsel again raised the issue of the rejected negotiated disposition agreement:

"[Defendant's counsel]: . . . [¶] When we came here and announced ready for trial, the court saw two defendants here. The People and I, right before trial, have always discussed that this was going to be a package case. [¶] Before we actually started trial, [the prosecutor] offered me an opportunity to have my client plead guilty to one nonstrike[8] count to 245 and to have him conduct 365 days in jail. [¶] It was the court

---

[8] Our record consistently shows the only negotiated disposition agreement offered to defendant by the prosecution was that set forth in the *Tahl* form and which required defendant to plead guilty to count 1—violation of section 245, subdivision (a)(1). As the basis for his plea, defendant admitted he committed the assault "with a deadly weapon" and defendant initialed the "strike offense" portion of paragraph 12 of the *Tahl* form. In

who refused to accept that plea bargain on the condition that both parties had to accept the deal.

"The Court: And in retrospect, under *People vs. Clanc*[e]*y*,[9] the court was correct in doing that, as I believe it's the Third District that has now ruled that would be an illegal plea bargain.

"[Defendant's counsel]: Well—

"The Court: So—but I note that, sir, because the People could not state that they were unable—that this case would thus qualify under one of the reasons under 1192.7. I never heard the People state that.

"[Defendant's counsel]: But the court never asked the People to provide any statements either to that.

"The Court: You are aware of the fact, sir, that I did earlier state that I am mindful of the discussions that happened in this case. You're also aware of the fact, sir, that pretrial negotiations are not a valid consideration at sentencing.

"[Defendant's counsel]: This—Your Honor, with all due respect, I'm not going into the pretrial considerations.

_____

his reply brief, defendant argues it was error for the trial court to fail to complete taking defendant's plea after reviewing the entire *Tahl* form with defendant "and almost the entire oral plea was placed on the record." The offense of assault with a deadly weapon in violation of section 245, subdivision (a)(1) constitutes a serious felony within the meaning of the "Three Strikes" law. (§§ 1192.7, subd. (c)(31) & 667; *People v. Delgado* (2008) 43 Cal.4th 1059, 1065 [assault with a deadly weapon in violation of section 245, subdivision (a)(1) is a serious felony and "[a] prior serious felony conviction also counts as a strike"].) It thus appears defendant's counsel's statement at the sentencing hearing that the prosecution's offer involved defendant pleading to a single "nonstrike" count may well have been in error. Whether the written negotiated disposition agreement involved pleading guilty to a strike is not before us and has not been briefed by the parties.

9 A few months after the sentencing hearing, the California Supreme Court granted a petition for review that was filed in *People v. Clancey* (2012) 202 Cal.App.4th 790, review granted April 11, 2012, S200158.

"The Court: Then why are you telling me?

"[Defendant's counsel]: The point is, my client took the stand and was forced to trial, not because this wasn't a fair deal, but because the court wanted both parties to go to trial. He was willing to accept responsibility.

"The Court: The court disagrees with that last statement.

"[Defendant's Counsel]: Very well. I don't believe—and if I can just make my objections. I don't believe judicial efficiency was found by having both parties go to trial. We would have had a shorter trial. My client was willing to accept the deal. [¶] When we came back the next day to start trial, I laid my series of objections. Then the court said well, I didn't think your client was voluntarily taking this deal. He was showing signs of hesitancy. That's what the court said right before we started trial. And that's when I inquired of the court and said, Your Honor, my client had issues about the jail, had issues about the time he's going to have to do. [¶] He—he didn't go to the issues of knowing, intelligent[,] voluntary waivers. That was the court's reasoning before we started trial, and I laid the rest of my objections when we started trial. [¶] My client then—strike that. [¶] Before we started trial, I asked the court, if we're forced to trial, will the court at least—

"The Court: Sir, I'm not going to allow you to make this rambling statement to me. What is your objection?

"[Defendant's counsel]: I just have two more minutes.

"The Court: What's the objection?"

After defendant's counsel and the court briefly discussed whether defendant was being excessively punished, defendant's counsel and the court engaged in this final discussion of the negotiated disposition agreement:

"[Defendant's counsel]: I guess my objection is I do feel that there was an abuse of discretion in not allowing my client to accept the plea bargain, that the suspended sentence and a year in county jail, the court essentially forced my client to go

14

to trial. He picked up two strikes. He would have had no strikes and he is serving the same amount of time. [¶] This case could have been resolved if the court would have accepted our plea bargain. And I object to the court, after the court ruled back then to say, you know, 'he was showing signs of hesitancy.' [¶] In all my practice[] as a criminal defense attorney, if there are issues of hesitation, generally speaking, the court will inquire of counsel or the defendant of what the hesitation is and if it's a knowing, intelligent[,] voluntary waiver. [¶] I felt that the court took it upon itself to force both parties to trial, and now my client has to deal with the suspended sentence. [¶] I also felt that when you asked me about my personal views about the suspended sentence, obviously my objections were based on the amount of county jail time. I think it is just excessive punishment. [¶] With that, I submit. We have the previous record obviously.

"The Court: Sir, I'm not going to allow those statements to remain uncharged. So I'm just going to now have the final word here.

"[Defendant's counsel]: Sure.

"The Court: First of all, contrary to my previous indicated sentence, I am not having the defendant waive his credits. Notice, I talked about that. But I've changed my mind on that. [¶] Second of all, that the court always has the authority to decline a plea bargain especially on the day of trial, and especially in the situation that involves a serious and violent felony like this. [¶] So to somehow suggest that I have abused my discretion in this regard, sir, is contrary to the record. [¶] And what you are—what you are doing, sir, is calling into question the factual findings that I made previously. [¶] You have made your record on that. [¶] I have not sentenced your client more harshly for the direct consequences of going to trial than the plea bargain was. If he ends up being convicted of additional crimes, those were the charged offenses that the defendant was facing. [¶] Now, back to my question. Jail surrender date, sir?

"[Defendant's counsel]: Can I correct the court?

"The Court: No, you may not, sir.

15

"[Defendant's counsel]:  The court—

"The Court:  No, you may not, sir.

"[Defendant's counsel]:  Can I make one comment?

"The Court:  No, you may not, sir.  What about my statements—

"[Defendant's counsel]:  You said—

"The Court:  What about my statements is not clear?  I didn't say—

"[Defendant's counsel]:  Everything is clear.

"The Court:  Thank you."


## III.

### THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S REJECTION OF THE WRITTEN NEGOTIATED DISPOSITION AGREEMENT AGREED TO BY THE PROSECUTION AND DEFENDANT.

The record does not support the trial court's rejection of defendant's written negotiated disposition agreement.  When defendant and Fuentez had each agreed to the terms of their respective written negotiated disposition agreements as a "package deal," the trial court conducted a thorough review on the record of the *Tahl* forms with defendant and Fuentez.  (At one point, the court accepted Fuentez's plea and found a factual basis for his plea.)  At no time, before or after trial, did the trial court make any findings or state that defendant's written negotiated disposition agreement as set forth on his *Tahl* form was unfair or contrary to the public interest.

Not until Fuentez decided to reject his negotiated disposition agreement, did the trial court state it would refuse to accept defendant's written negotiated disposition agreement.  The court also acknowledged to defendant's counsel that it had done so because there was no longer a package deal.  But that was not the trial court's call; indeed, it was the prosecution's call to determine whether to allow defendant to plead according to the terms of his written negotiated disposition agreement after Fuentez

16

elected to go to trial, and the prosecution chose to keep its offer to defendant open. We have found no legal authority supporting the trial court's rejection of a negotiated disposition agreement on such a ground.

The trial court also stated it rejected defendant's written negotiated disposition agreement because the court sensed hesitancy on defendant's part in entering the plea. But the record does not support any such finding. The reporter's transcript shows that defendant asked his attorney questions during the hearing on the written negotiated disposition agreement, but does not show that defendant's assent to the terms of the written negotiated disposition agreement was anything other than voluntary, intelligent, and knowing. Although defendant's counsel told the court that defendant was not hesitant and wished to enter the plea in accordance with the written negotiated disposition agreement, the court did not question defendant or counsel on this issue.

In addition, the trial court stated that it was within the court's discretion to reject a negotiated disposition agreement on the date set for trial, even though the court had been willing to accept a negotiated disposition agreement the afternoon before, which actually was the date set for trial. Furthermore, the record shows the court had also been willing to accept the written negotiated disposition agreement as to defendant on the date set for trial only if Fuentez had also accepted the agreement that had been offered to him. At the first hearing on the agreement, the court told Fuentez, defendant, and their respective attorneys that "the court would accept no more negotiated pleas once [the court] order[ed] the jury panel." According to the record, the jury panel had not been ordered at the time the court rejected defendant's written negotiated disposition agreement.

In the respondent's brief, the Attorney General argues the trial court would have had to reject the proffered negotiated disposition agreement because it was illegal under section 1192.7, subdivision (a). But we cannot presume the trial court would have made such a determination. (*In re Alvernaz*, *supra*, 2 Cal.4th at pp. 941-942, fn. 10 ["Our

17

refusal to create a presumption of judicial approval of plea bargains applies to plea bargains subject to the proscriptions of section 1192.7, as well as to all other types of plea bargain"].)

Based on the record before us, we conclude the trial court abused its discretion by rejecting defendant's change of plea in accordance with defendant's written negotiated disposition agreement. We note that the court and counsel made a good record of the proceedings, sufficient for appellate review.


IV.

UNDER THE CIRCUMSTANCES OF THIS CASE, THE APPROPRIATE REMEDY FOR THE TRIAL COURT'S ERROR IN FAILING TO ACCEPT DEFENDANT'S WRITTEN NEGOTIATED DISPOSITION AGREEMENT IS SPECIFIC ENFORCEMENT.

We now turn to the issue of the appropriate remedy. In *In re Alvernaz*, *supra*, 2 Cal.4th at page 942, the California Supreme Court considered the appropriate remedy when the defendant's counsel had been ineffective for failing to communicate a plea bargain offer to the defendant. Citing, inter alia, *People v. Mancheno* (1982) 32 Cal.3d 855, 861, the California Supreme Court stated, "California courts, however, generally disfavor the remedy of specific enforcement of a failed plea bargain" when it will limit the judge's sentencing discretion. (*In re Alvernaz*, *supra*, at p. 942.)[10]

In *People v. Mancheno*, *supra*, 32 Cal.3d at pages 860-861, the Supreme Court stated: "The usual remedies for violation of a plea bargain are to allow defendant to withdraw the plea and go to trial on the original charges, or to specifically enforce the plea bargain. Courts find withdrawal of the plea to be the appropriate remedy when specifically enforcing the bargain would have limited the judge's sentencing discretion in light of the development of additional information or changed circumstances between

---

[10] The court noted, "[s]pecific enforcement of a failed plea bargain is not a remedy required by the federal Constitution." (*In re Alvernaz*, *supra*, 2 Cal.4th at p. 942.)

acceptance of the plea and sentencing.  Specific enforcement is appropriate when it will implement the reasonable expectations of the parties without binding the trial judge to a disposition that he or she considers unsuitable under all the circumstances."

The Supreme Court further explained:  "'Specific enforcement of a plea bargain agreement is actually a broad term covering several different types of relief.  The remedy differs depending upon the nature of the breach and which party is seeking specific enforcement.  When the breach is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain.  When the breach is a refusal by the court to sentence in accord with the agreed upon recommendation, specific enforcement would entail an order directing the judge to resentence the defendant in accord with the agreement.  The People as well as a defendant may seek such specific enforcements.  The effect is to limit the remedy to an order directing fulfillment of the bargain.  In such instances, the defendant is not allowed to withdraw his guilty plea.'"  (*People v. Mancheno*, *supra*, 32 Cal.4th at p. 861.)

Here, the trial court did not determine the terms of defendant's written negotiated disposition agreement as set forth in the *Tahl* form were unfair or otherwise against the public interest.  Therefore, specific enforcement of defendant's written negotiated disposition agreement would not infringe on the trial court's discretion to determine such an agreement to be unsuitable.  Furthermore, the terms of defendant's written negotiated disposition agreement were offered by the prosecution and accepted by defendant.  Under these circumstances, the only remedy that would address the error at issue in this case is the specific enforcement of defendant's written negotiated disposition agreement.

19

## DISPOSITION

The judgment is reversed. On remand, we direct the trial court to accept defendant's plea in accordance with the terms of defendant's written negotiated disposition agreement contained in our record in the clerk's transcript at pages 175 through 182.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.