Filed 1/31/22  P. v. Tavares CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SHACARRIA TAVARES,<br><br>Defendant and Appellant. | F079639<br><br>(Super. Ct. No. MCR055536)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Karriem Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2017, appellant Shacarria Tavares entered a conditional guilty plea to a charge of battery by an inmate on a nonconfined person (Pen. Code, § 4501.5).[1] Following negotiations, the People agreed to dismiss this charge after two years if appellant abided by certain terms and conditions; if appellant did not comply, she would serve a prison term of four years.

In 2019, appellant sought dismissal of this criminal matter. The People opposed that request, contending that she was in violation of her plea agreement. The trial court determined that a material term of the plea agreement was ambiguous, and it gave appellant the opportunity to file a motion to withdraw her plea. Appellant, however, asked the court for specific performance. The trial court concluded that appellant was in violation of the plea agreement, and it sentenced her to prison for four years.

In the present appeal, appellant contends the trial court erred. According to appellant, the written plea agreement is not ambiguous, and the court should have granted her specific performance, resulting in a dismissal of this case. Respondent takes the opposite view, asserting that the court properly resolved this dispute. Respondent asks us to affirm appellant's judgment.

We conclude that appellant has the better argument. The express terms of the written plea agreement control in this situation, and we find no ambiguity. Moreover, even if we presume ambiguity exists, appellant's interpretation of the disputed terms is reasonable. To protect appellant's due process rights, the plea agreement must be construed in her favor. We conditionally reverse the judgment and remand for further proceedings. The People may elect to dismiss the charges or, consistent with how the plea agreement has been construed in this opinion, the People may attempt to establish that appellant violated the 2017 plea agreement.

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

2.

**BACKGROUND**

## I. Appellant's Charged Crime.

When appellant committed the present offense, she was incarcerated in prison and serving a five-year sentence for robbery (§ 211) (her prior strike offense). The present offense occurred when appellant used a cup while in prison to throw an unknown clear liquid (likely water) at a psychiatric technician, who was administering medication. The liquid struck the victim from her upper thighs to below her knees. The victim did not suffer any injury.[2]

In 2016, the People charged appellant for this crime, alleging a violation of section 4501.5. It was also alleged that appellant had the prior strike offense.

## II. The 2017 Plea Agreement.

In 2017, appellant entered into a written plea agreement with the People to resolve this matter. She agreed to a prison term of four years (a low term of two years doubled because of the strike prior). In exchange, the People agreed to dismiss the charge after two years if appellant abided by certain terms and conditions.

One condition is at the center of the present dispute. It appears as follows in paragraph 18 of the written plea agreement:

> "18.  I have not been induced to plea[d] GUILTY by any promise or representation of a lesser sentence, probation, reward, immunity, or anything else, except as stated below:
>
>> "Count 1 as a two [year] conditional low term [two years] [and] admit strike prior for four [years]. If no new cases filed by [the district attorney] [and] no 115's involving assault, battery, gassing on staff then can withdraw plea."[3]

---

[2]     At the 2017 change of plea hearing, the parties stipulated that a factual basis supported the plea from an incident report.

[3]     The term "115" refers to "prison write-ups" from the California Department of Corrections and Rehabilitation (CDCR). A CDCR 115 rules violation report documents serious misconduct that is believed to be a violation of law or otherwise not minor in nature. (*In re Gray* (2007) 151 Cal.App.4th 379, 389; Cal. Code Regs., tit. 15, § 3312,

At the 2017 change of plea hearing, appellant's counsel informed the court that appellant agreed to "no 115 regarding assault, battery, or gassing a staff member," and, if she complied with these terms, she would be allowed to withdraw her plea in two years. The prosecutor agreed with that representation, and further stated, "And if [appellant] violates by violating those terms, which is not obey all laws, then they would get the four years." The trial court asked appellant if that was her understanding. Appellant said, "Yes."

Later in the change of plea hearing, the trial court reviewed with appellant her written change of plea form. The court expressed its understanding on the record, derived from the plea agreement, that appellant would be entering a plea as to count 1 for the low term of two years. She would admit the prior strike, which would result in a total prison term of four years. The court made the following relevant comments:

> "THE COURT: If there were no new complaints filed against you or no 115s—those are administrative procedures at the Department of Corrections—no gassing, assaults, or batteries for the next two years, and you obey all laws, you would return to court in two years; and on confirmation that you have obeyed all laws and complied with those terms, then you would be able to withdraw your plea. Is that your understanding?

> "[APPELLANT]: Yes."

At no point at the 2017 change of plea hearing did either the prosecutor or appellant's counsel object or otherwise dispute the trial court's understanding of the agreed upon conditions comprising the plea agreement.

---

subd. (a)(3).) We also note that the crime of "gassing" is defined for prison inmates as "intentionally placing or throwing, or causing to be placed or thrown, upon the person of another, any human excrement or other bodily fluids or bodily substances or any mixture containing human excrement or other bodily fluids or bodily substances that results in actual contact with the person's skin or membranes." (§ 4501.1, subd. (b).)

4.

**III.    In 2019, The Parties Dispute Whether Or Not Appellant Fulfilled Her Obligations In The Plea Agreement.**

In May 2019, appellant returned to the trial court regarding this matter. A dispute occurred regarding whether or not she had complied with the terms and conditions of the 2017 plea agreement. This dispute centered on whether or not appellant had been required to refrain from incurring any 115's regarding assaults or batteries on *nonstaff* members, or whether the negotiated terms had only applied to staff. As discussed below, the trial court was informed that appellant had incurred 115's involving nonstaff members after this plea agreement had gone into effect.

At the relevant hearings in 2019, appellant was represented by two defense attorneys, one of whom had represented her at the 2017 change of plea.[4] The defense informed the trial court that the parties had intended for the term "on staff" to apply to any assault, battery, or gassing. This was based on the defense attorney's recollection and his notes. The defense asserted that the present criminal matter involved "spilling" four ounces of water on a guard's leg, which was a "major reason" why the parties had negotiated the plea deal. The defense was willing to have appellant's trial counsel from 2017 take the witness stand and testify about what had occurred at the change of plea hearing. The defense argued that it would not have accepted such a plea agreement in 2017, and it would have instead gone to trial, if the offer had required appellant to refrain from incurring 115 violations involving nonstaff members.

The prosecutor responded that an ambiguity existed in the plea agreement. According to the prosecutor, the word "staff" only applied to the word "gassing." The prosecutor argued that the trial court should rely on the transcript from the change of plea hearing to resolve this dispute. The prosecutor also noted that the court had advised

---

[4]    The prosecutor who was involved in the 2017 change of plea hearing did not participate in the 2019 hearings regarding this dispute.

appellant in 2017 that she could not have any gassings, assaults or batteries for the next two years, and she had to obey all laws. Appellant had agreed with those terms.

The defense attorney from 2017 responded that, according to his notes, these terms only applied to "staff and nothing else." He further asserted that he remembered "making an exact, specific agreement to only staff." He argued to the trial court that he would have made such an offer because the facts from this case were "so benign." The defense contended that appellant should be entitled, at a minimum, to withdraw her plea.

The trial court determined that, under the applicable law, a "gassing" could not occur on a nonstaff member. The court noted that the modifier "on staff" could be read to only apply to the term "gassing" and it would not necessarily modify the terms "battery or assault."

The prosecutor advised the court that his file indicated " '115s involving battery, assault, gassing.' " There was "nothing about that being limited to staff in our file." For that reason, the prosecutor asserted an ambiguity existed. The prosecutor again contended that the transcript resolved the issue because the court had advised appellant in 2017 "without any reference to it being relating only to staff."

The prosecutor informed the court in 2019 that appellant had received "30 115s, and some of them would clearly run afoul of the failure to obey all laws in any case." The defense confirmed that, of those 30, appellant had received seven 115's while in prison that involved assaults or batteries on nonstaff members.

The defense reiterated that appellant had signed the plea agreement, and the prosecutor in 2017 had acquiesced to those terms. The defense asserted that, if the trial court found ambiguity, appellant should be permitted to withdraw her plea. However, the defense also argued that it had presented "overwhelming evidence" of the parties' intent in 2017, and the prosecution had presented "absolutely nothing" except for "interpreting and ignoring certain things."

The trial court ruled that the plea agreement was ambiguous. The term "on staff" could be read to only apply to gassing, and not necessarily to battery or assault. The court afforded appellant an opportunity to withdraw her plea.

The prosecutor asked the court to clarify whether or not the transcript from the change of plea hearing resolved the ambiguity appearing in the plea form because the court had advised appellant "on more specific terms" than what appeared in the plea form. The court made the following response:

> "THE COURT: I think [appellant] was of a mind that it was something other than that, when hearing that without a particular specific modifier may have readily assented to that, not understanding what I'd take to be a distinction between the two. So I don't find that it is fatal to the defense position that she was still of—in her mind, thinking one way, and then the language didn't resolve that for her.
>
> "So if that answers your question, I think it's still ambiguous—or could be deemed still ambiguous to [appellant]. The Court did not specifically state the verbatim terms, and I cannot say that the Court had in mind anything in particular in that regard at all. Just stating the terms as understood by the Court."

The defense argued that simply permitting appellant to withdraw her plea did not "seem like the right answer," especially because defense counsel recalled the terms of the negotiated deal.

Later, the defense asked the court to examine Civil Code sections 1636[5] and 1638.[6] According to the defense, the court should treat the plea agreement like a contract. Any ambiguities should be resolved in appellant's favor because she was promised the agreement.

---

[5] According to Civil Code section 1636, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

[6] According to Civil Code section 1638, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

7.

The prosecutor responded that "obeying all laws" was contemplated at the time of the plea agreement, and that was not ambiguous. The prosecutor was prepared to put on evidence to show that appellant had failed to obey all laws during the two years following this plea agreement. The prosecutor asserted that this was "regardless of how we interpret any qualifiers as to the battery or assaultive behavior."

The defense objected to the idea that " 'obey all laws' " had been a negotiated term because it did not appear in the plea agreement. The prosecutor responded that his notes from the change of plea hearing "clearly" indicated, " '[o]bey all laws.' " The prosecutor believed this showed that this term "was contemplated on my end." The prosecutor also noted that, in the 2017 transcript, the prosecutor at that time had stated appellant was to obey all laws.

The defense continued to argue that a requirement to "obey all laws" was not part of the agreement. According to the defense, the court was required to examine the intent of the parties if the plea agreement was ambiguous. The court asked if it could examine the transcript to determine the intent. The defense responded that the court in 2017 had "left out" the requirement of everything only applying to staff, and defense counsel had failed to object at the time. According to the defense, the court had recited more "general" terms and not what was actually reflected in the plea agreement. Defense counsel stated that the prosecutor in 2017 had perhaps "misspoke" when she said appellant had to obey all laws. The defense reiterated that "obey all laws" was not part of the plea agreement. The defense asserted that it was inappropriate to place "weight into that minor statement" when it was "clearly not meant" as part of what appellant had signed.

Defense counsel informed the trial court that, over a break, he had spoken with the prosecutor who had negotiated this plea agreement in 2017. According to defense counsel, that prosecutor could not recall what had occurred in this particular matter. However, the prosecutor had agreed that her office did sometimes reach plea agreements

8.

that only required an incarcerated defendant from receiving no new 115's involving staff. The prosecutor had informed defense counsel that she had not been contacted by her office about this matter.

## IV. Appellant's Trial Counsel Admits That Mistakes Had Occurred In 2017.

In May 2019, the trial court expressed its concern that, in 2017, the defense had not objected to the prosecutor's statement that appellant was required to obey all laws. The court noted "that may have been where the Court—where I got it and recited that to [appellant]. There was no objection there, and [appellant] agreed."

Defense counsel stated that "a series of mistakes" had occurred at the 2017 change of plea hearing, both by himself and the prosecutor. According to defense counsel, the prosecutor mistakenly said that appellant had to obey all laws, and defense counsel had failed to object. Defense counsel also said it was reasonable when appellant had agreed to everything at the change of plea hearing, which is what most defendants do in that situation. Finally, defense counsel informed the court that "a calamity of mistakes" had occurred at the change of plea hearing, "and that's how we got into this situation, if you want to look at it the way the Court's interpreting it. It's a mistake after mistake, and now we're here. But we started with something very clear, and that was the plea form." Later, defense counsel said it appeared to be his fault because he had failed to object in 2017 when terms were discussed that were beyond the written agreement.

## V. Appellant Seeks Specific Performance Of The Plea Agreement.

In 2019, after finding that ambiguity existed in the written plea agreement, the trial court afforded appellant the opportunity to make a motion to withdraw her negotiated plea. In May 2019, appellant filed a motion in the trial court seeking specific performance of the plea agreement. The written motion argued that appellant had performed her portion of the agreement by refraining from assaultive behavior against staff, and she had not been prosecuted for any new cases. The motion concluded with a

9.

request for the trial court to "find no ambiguity with the plea and require specific performance of the plea agreement and allow [appellant] to withdraw her plea of guilty."

On May 31, 2019, the trial court heard oral arguments regarding appellant's motion. The court ruled that the modifier referring "to staff" was ambiguous because "the assault and battery does not necessarily have to refer to staff the way the plea form is written." The court determined that the ambiguity was resolved by the transcript from the 2017 change of plea hearing. The court noted that, when it discussed this with appellant at that hearing, the restrictions had been expressed as applying to any assault and battery. Appellant had agreed with that representation. The court determined that appellant had intended to accept those terms and conditions. The court further concluded that appellant had subsequently received 115's involving assault and battery, so she did not qualify for relief.

At sentencing, the trial court stated that appellant's plea bargain had required her to not have any "115s" regarding "assault, battery, gassing *nonstaff/staff*." (Italics added.) The court sentenced appellant to four years in state prison in conformity with the plea agreement.[7]

## DISCUSSION

In the present appeal, appellant seeks specific performance of the plea bargain. She contends that she complied with the negotiated terms because she did not receive any 115 violations involving staff during the two years following her change of plea. She argues that this criminal case should be dismissed. In contrast, respondent contends that appellant violated the plea agreement because she incurred 115 violations involving nonstaff. Respondent asserts that specific performance is inappropriate. Respondent urges us to affirm the judgment.

---

[7] The defense elected not to contest the fact that appellant had incurred 115's involving nonstaff members. Instead, appellant decided to be sentenced and file the present appeal.

10.

We conclude that appellant has the better argument. A plea negotiation occurs between the People and the defendant, and it is approved by the trial court. (*People v. Segura* (2008) 44 Cal.4th 921, 929–930.) A trial court "may decide not to approve the terms of a plea agreement negotiated by the parties." (*Id.* at p. 931.) However, once a court accepts the terms of a negotiated plea, it lacks jurisdiction to alter the terms. (*Ibid.*)

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 767 (*Shelton*).) The goal is to give effect to the mutual intent of the parties. (Civ. Code, § 1636; *Shelton*, *supra*, 37 Cal.4th at p. 767.) " 'If contractual language is clear and explicit, it governs.' " (*Shelton*, *supra*, at p. 767, citing Civ. Code, § 1638.) Moreover, " '[e]vidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.' [Citation.] 'It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce. [Citation.]' [Citation.]" (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1159; see also *People v. Toscano* (2004) 124 Cal.App.4th 340, 345 (*Toscano*) [plain and unambiguous terms of plea bargain cannot be altered by parol evidence].) However, if the terms of a promise are ambiguous or uncertain in any respect, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it. (*Shelton*, *supra*, at p. 767, citing Civ. Code, § 1649.)

## I. The Plea Agreement In This Matter.

Our analysis starts with the disputed language in the plea agreement:

"18. I have not been induced to plea[d] GUILTY by any promise or representation of a lesser sentence, probation, reward, immunity, or anything else, except as stated below:

"Count 1 as a two [year] conditional low term [two years] [and] admit strike prior for four [years]. If no new cases filed by

11.

[the district attorney] [and] no 115's involving assault, battery, gassing on staff then can withdraw plea."

Appellant argues that these terms are "clear and unambiguous." As such, she contends that the written terms should control. She asserts the trial court was "bound" to this language in interpretating the plea agreement, and it erred in finding ambiguity. Alternatively, appellant maintains that any ambiguities in the plea agreement should be resolved in her favor to protect her due process rights. She further asserts that she resolved any ambiguity through "extrinsic evidence" because her trial counsel explained his recollections about the plea negotiations.[8]

On the other hand, respondent asserts that the disputed terms should be interpreted as applying to both staff and nonstaff. Respondent argues that appellant's interpretation is not reasonable. According to respondent, the phrase "on staff" can only modify the word "gassings" and it does not modify the words "assault" and "battery" appearing in the written plea agreement.

## A. The modifier "on staff" must be construed to apply to both assault and battery.

A "gassing" in a prison can only be committed "upon the person of any peace officer" or "employee of the state prison …." (§ 4501.1, subd. (a).) This understanding is critical in resolving how to interpret the written plea agreement.

When construing terms in a contract, we must "strive to 'give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable.' " (*United Farmers Agents Assn., Inc. v. Farmers Group, Inc.* (2019) 32 Cal.App.5th 478, 495, quoting *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507; see also *Appalachian Ins. Co. v. McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 12 [an interpretation which renders part of an instrument surplusage should be avoided].)

---

[8] Extrinsic evidence may be admitted to interpret an agreement when a material term is ambiguous. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126.)

Thus, a court may not "omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.) Stated another way, "courts are not empowered under the guise of construction or explanation to depart from the plain meaning of the writing and insert a term or limitation not found therein." (*Estate of Wemyss* (1975) 49 Cal.App.3d 53, 59.)

Because a gassing in prison can only occur on staff members, the prepositional phrase "on staff" appearing in the written plea agreement would be rendered superfluous, void or inexplicable if we were to construe this agreement in the manner that respondent now asserts. That is, the phrase "on staff" only has meaning if that phrase was intended to modify the words "assault" and "battery" appearing in the written agreement. Thus, respondent's interpretation of how to read the disputed terms is neither reasonable nor does it give meaningful effect to the phrase "on staff." Thus, we conclude that appellant's interpretation is the proper one when viewing the written plea agreement. "So viewed, the writing is plain and unambiguous, and it cannot be altered by parol evidence." (*Toscano*, *supra*, 124 Cal.App.4th at p. 345.) In any event, we also conclude that any presumed ambiguity should be resolved in appellant's favor.

**B.      Any presumed ambiguity should be resolved in appellant's favor.**

Even when we presume ambiguity exists in the written document, we nevertheless resolve this dispute favorably for appellant. Plea agreements are interpreted " 'according to the general rule "that ambiguities are construed in favor of the defendant. Focusing on the *defendant*'s reasonable understanding also reflects the proper constitutional focus on what induced the *defendant* to plead guilty." ' " (*In re Timothy N.* (2013) 216 Cal.App.4th 725, 734, quoting *Toscano*, *supra*, 124 Cal.App.4th at p. 345; see also *United States v. De la Fuente* (9th Cir. 1993) 8 F.3d 1333, 1337, fn. 7.)

This record supports a conclusion that appellant was induced to enter her conditional plea based on a promise from the prosecution that this matter would be

dismissed in two years if she failed to incur any 115's involving assaults, batteries or gassings involving prison staff. In 2019, appellant's trial counsel made unsworn representations to the trial court regarding the negotiations that had occurred in 2017. We will treat those various statements as offers of proof.[9] These representations demonstrate that appellant's interpretation is reasonable even if ambiguity is presumed.

According to defense counsel's unrefuted statements, the parties had intended in 2017 for the term "on staff" to apply to any assault, battery, or gassing. The defense accepted this plea deal because appellant was not required to refrain from incurring 115 violations involving nonstaff.

### C.    The transcript from the change of plea hearing does not support respondent's position.

Respondent argues that the transcript of the 2017 change of plea hearing resolves this dispute in the government's favor. According to respondent, the trial court provided appellant with "a clear and unambiguous interpretation of the terms of the agreement, which reasonably required her to obey the rules in prison to receive leniency." We disagree with respondent's interpretation of the record.

In 2017, the trial court recited the terms of the plea agreement on the record, and the court asked appellant if she agreed to "obey all laws" and not incur any new gassings, assaults or batteries for two years. Appellant agreed to these terms. At no point did either the prosecutor or appellant's trial counsel object or otherwise dispute the trial court's understanding of the agreed upon conditions comprising the plea agreement.

When read in context, the trial court did not change the terms of the negotiated plea agreement, and the court did not conduct negotiations with appellant. Instead, it is

---

[9]     "An offer of proof is a statement by counsel describing proposed evidence and what he or she intends to prove if such evidence is admitted. [Citation.]" (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1113.) In 2019, appellant's attorneys were willing to have appellant's trial counsel from 2017 take that stand and testify about what had occurred at the change of plea hearing.

14.

apparent the trial court was thoughtfully attempting to comprehend the terms which the parties had negotiated. However, this record does not establish that appellant and the People had negotiated a deal wherein appellant agreed to "obey all laws." Although the prosecutor made such an oral representation at the change of plea hearing, that condition does not appear in the written plea agreement. The parties' mutual intent is governed at the time they formed their agreement, and it is found, if possible, solely in the contract's written provisions. (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1129.) The written plea agreement does not require appellant to "obey all laws." There is no ambiguity in this regard. Consequently, we decline to modify the written agreement in this fashion or otherwise rely on parol evidence. (See *Toscano*, *supra*, 124 Cal.App.4th at p. 345.)

### D.     The Trial Court's Comments In 2019 Are Instructive.

In 2019, the trial court stated its belief that the disputed terms were ambiguous. The court noted that the modifier "on staff" could be read to only apply to the term "gassing" and it may not necessarily modify the terms "battery or assault." In response to a query from the prosecutor, the court acknowledged that it believed appellant may have held a different understanding of that modifier at the change of plea hearing. As a result, the court believed that the written terms could still be deemed ambiguous as to appellant.

These informative comments from the court in 2019 support our conclusion that appellant understood the plea agreement in a manner that she now advances in this appeal. As the trial court realized, appellant had likely not understood the terms in the same manner as the trial court had when it had memorialized the agreement during the change of plea hearing. The totality of this record supports appellant's reasonable position that she accepted an offer to not incur any 115's involving assaults, batteries or gassings, and those requirements only applied to staff. Under these unique circumstances, the plea agreement should be enforced in her favor. (See *Toscano*, *supra*,

124 Cal.App.4th at p. 345.) Focusing on appellant's reasonable understanding reflects the proper constitutional focus on what induced her to enter this conditional plea. (*Ibid*.)

E. **Appellant's claim of ineffective assistance of counsel is further grounds to resolve any presumed ambiguity in her favor.**

Appellant raises a claim of ineffective assistance of counsel. This claim provides further support for our conclusion to resolve any presumed ambiguity in her favor.

At the 2019 hearings, appellant's trial counsel from 2017 made it clear that he had committed a series of mistakes at the change of plea hearing. According to defense counsel, he should have objected when the prosecutor had said appellant was required to obey all laws. Defense counsel believed the prosecutor had misspoken in that regard. Defense counsel also indicated he had failed to object when the trial court memorialized the agreement on the record when it discussed terms that were beyond the written agreement. Defense counsel believed appellant had just agreed with everything because that is what defendants do in that situation.

The concessions of error by appellant's trial counsel provide further grounds to protect appellant's due process rights and enforce the plea agreement according to her reasonable interpretation of it. Appellant was entitled to effective assistance of counsel during the plea negotiations. (*McMann v. Richardson* (1970) 397 U.S. 759, 770–771.) Based on defense counsel's unrefuted admissions, appellant signed a plea agreement that only required her to not incur 115's involving staff, and her counsel failed to ensure those particular terms were memorialized on the record when this matter went before the trial court. Under these circumstances, appellant is entitled to relief that protects her constitutional rights.

II. **Specific Performance Is The Only Remedy That Will Protect Appellant's Due Process Rights In This Unique Situation.**

Our Supreme Court has stated that the "integrity" of the plea bargaining process must be maintained by ensuring the state keeps its word when it offers inducements in

exchange for a plea of guilty. (*People v. Mancheno* (1982) 32 Cal.3d 855, 859–860.) A defendant must be given " 'what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " (*Id.* at p. 860, quoting *Santobello v. New York* (1971) 404 U.S. 257, 262.)

"Although the terms of a plea bargain agreement may be ascertained with reference to principles of contract law [citation], plea bargains are specifically enforced by the courts on *due process* grounds [citation]." (*Leo v. Superior Court* (1986) 179 Cal.App.3d 274, 283.) Due process requirements apply not only to the taking of the plea, but also to implementation of the bargain. (*People v. Holman* (2013) 214 Cal.App.4th 1438, 1473.) A violation of a bargain by an officer of the state raises a constitutional right to some remedy. (*Ibid.*)

When the prosecutor refuses to comply with the terms of a plea agreement, specific enforcement is the appropriate remedy. (*People v. Kaanehe* (1977) 19 Cal.3d 1, 13.) The crucial factor in determining if a plea agreement may be specifically enforced for a defendant is " 'whether the defendant has given up a valuable constitutional right or otherwise detrimentally relied on the promises made in the plea bargain. [Citation.]' [Citation.]" (*Leo v. Superior Court*, *supra*, 179 Cal.App.3d at pp. 283–284.)

Here, appellant negotiated with the People in 2017 and they agreed in writing that this criminal matter would be dismissed in two years if, in part, appellant did not incur any 115's involving assaults, batteries or gassings involving staff. Respondent concedes that appellant did not incur any 115's involving staff. As respondent notes in its brief, appellant's 115's "involved inmates only." In 2019, the People refused to honor the written plea agreement. Since 2019, appellant has remained in prison awaiting the outcome of this appeal.

17.

We would normally grant appellant an opportunity to withdraw her plea agreement. However, such a remedy would be of little consequence to her because she has now served more than half of her four-year prison term for the present offense. Under these unique circumstances, we conclude that the state did not adhere to the terms of a significant promise it made to induce the plea, and due process requires that appellant be afforded an appropriate remedy. (See *Santobello v. New York*, *supra*, 404 U.S. at p. 261; *People v. Mancheno*, *supra*, 32 Cal.3d at p. 860.) Specific performance of the plea agreement is the only remedy that will protect appellant's rights.

Respondent, however, asserts that specific performance may only be ordered if it will implement the parties' reasonable expectations without binding the trial judge to a disposition that he or she considers unsuitable under all the circumstances. (See *People v. Mancheno*, *supra*, 32 Cal.3d at p. 861.) According to respondent, the trial court found the written terms of the plea agreement to be ambiguous, and enforcing the plea agreement in appellant's favor would not implement the reasonable expectations of the parties. We disagree.

We have already concluded that the disputed written terms are not ambiguous. Further, respondent's interpretation of how those terms should be interpreted is not reasonable. As such, enforcing the written plea agreement in appellant's favor does implement the parties' reasonable expectations as reflected in the executed document. Accordingly, we will conditionally reverse appellant's judgment and remand this matter for further proceedings.

### III. The Prosecution Shall Have An Opportunity To Dismiss The Charges Or Establish That Appellant Violated The Plea Agreement As That Document Has Been Construed In This Opinion.

When a prosecutor refuses to comply with the terms of a plea agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain. (*People v. Kaanehe*, *supra*, 19 Cal.3d at p. 13.)

This record strongly suggests that appellant complied with the terms of the 2017 plea agreement as that document has been construed in this opinion. Indeed, respondent concedes that appellant did not incur any 115's involving staff in the two years after that plea agreement was executed. As respondent notes in its brief, appellant's 115's "involved inmates only." However, no evidence was taken below to establish the nature of the 115's that appellant did incur in the two years after this plea agreement went into effect. Consequently, when this matter is remanded, the People may either elect to dismiss the charges or it may attempt to establish that appellant was in violation of the 2017 plea agreement. If the prosecution establishes a violation, then the trial court shall reinstate appellant's judgment.

## DISPOSITION

Appellant's judgment is conditionally reversed. After the filing of the remittitur in the trial court, the People shall have 30 days in which to file a written election whether to dismiss the charges or to establish that appellant violated the 2017 plea agreement as that document has been construed in this opinion. If they do not timely file such an election and/or do not establish a violation within the time set forth in section 1382, subdivision (a)(2)—60 days unless waived by appellant—the trial court shall order dismissal of this criminal matter. If the People establish appellant's violation of the 2017 plea agreement, the trial court shall reinstate the judgment.

LEVY, Acting P. J.

WE CONCUR:


SMITH, J.


MEEHAN, J.

19.