Filed 5/12/26  P. v. Craig CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DRAKE ALAN CRAIG,<br><br>    Defendant and Appellant. | H053185<br>(Santa Clara County<br>Super. Ct. No. C2412379) |

In 2024, appellant Drake Alan Craig pled no contest to possession of a firearm by a felon (Pen. Code[1], § 29800, subd. (a)(1)).  In exchange, the trial court indicated a sentence of 120 days in county jail, to be served in the voluntary home detention program.  At sentencing, the trial court stated it would deviate from its previous indicated sentence based on new information it had received from the People and indicated a higher sentence of 10 months in county jail, while offering Craig the opportunity to withdraw his plea.  Craig chose not to withdraw his plea, and the trial court subsequently sentenced him to its new indicated sentence of 10 months in county jail.

On appeal, Craig contends that the trial court violated his due process rights by refusing to honor the terms of his plea agreement, which he reasonably relied upon and complied with in full.  For the reasons discussed below, we affirm.

---

[1] Undesignated statutory references are to the Penal Code.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    Factual Background[2]

On July 28, 2024, Craig was gathered with several people in a Target parking lot on Capitol Expressway in San Jose. There were numerous vehicles in the group, many of which were parked illegally. Police officers subsequently arrived on scene in response to a 911 call regarding a possible "side-show" or a possible fight. After the police detained several individuals, including Craig, two men fled in a vehicle, and the passenger, Clayton Johnson, then "foot-bailed" and continued to flee on foot from officers. After Johnson was caught, a search of his path of flight on foot revealed a loaded handgun with a large capacity magazine.

The officers then searched the remaining detainees and their vehicles. A search of a Cadillac SUV, where Craig had been a passenger, revealed four additional loaded handguns, with two of the handguns located under passenger seats of the vehicle, and the remaining two handguns located in the hatchback trunk area of the vehicle. Craig had been observed with two other individuals rummaging in the trunk area when officers initially arrived on scene. Further investigation of social media postings and photos taken from earlier on the same day indicated that Craig had been photographed with Johnson; these photos depicted Johnson with a large bulge in his pants pocket consistent with the handgun containing the large capacity magazine.

## B.    Procedural History

### 1.  Charges and Change of Plea

On July 31, 2024, the Santa Clara County District Attorney's office filed a complaint charging Craig and six co-defendants with numerous firearm-related offenses stemming from the July 24, 2024 incident. Craig was charged with possession of a

---

[2] As Craig entered his plea before a preliminary hearing was held, we draw the pertinent facts from the People's sentencing memorandum filed in anticipation of Craig's sentencing hearing.

firearm by a felon (§ 29800, subd. (a)(1); count 8); carrying a loaded firearm on his or her person or in a vehicle by a felon (§ 25850, subd. (a); count 9), and possession of ammunition by a felon (§ 30305, subd. (a)(1); count 10).

At a hearing on December 17, 2024, based on the trial court's indicated sentence of 120 days in county jail, which would be eligible for all alternative sentencing programs, including electronic monitoring, Craig entered a plea of no contest to possession of a firearm by a felon (§ 29800, subd. (a)(1); count 8). To this effect, Craig signed an advisement, waiver and plea form, where he wrote in an "X" for section 9 entitled "Plea Agreement with the District Attorney" and initialed section 11 entitled "Open Plea." In this section, Craig checked and initialed boxes indicating that the court had provided him with "a non-binding, tentative indicated sentence" of 120 days in jail, which he would complete through the voluntary home detention program (VHDP), and up to five years of formal probation.

At the hearing, after Craig's counsel stated that he wished to plead no contest in exchange for the indicated sentence and begin serving his time on VHDP starting January 15, 2025, the trial court asked the People if they wished to put anything on the record, which the People declined. During the plea colloquy, the court stated the following: "the Court is obviously allowing you to just stay out of custody and do this time on the VHDP. However, if you fail to come to court on your sentencing date without a legal reason or justification, or if you are arrested for a new law violation, the Court will no longer be bound by the terms of this plea agreement and your plea will become an open plea to the Court. You will not be allowed to withdraw your plea and the Court can sentence you anywhere up to the max. Do you understand that, sir?", to which Craig responded in the affirmative. In addition, after the trial court had completed the plea colloquy, the People indicated that counts 9 and 10 would be submitted for dismissal at the time of sentencing. The matter was set for sentencing on April 1, 2025.

3

### 2. *Sentencing*

On March 28, 2025, the People filed a sentencing memorandum requesting that the trial court depart from its previously indicated sentence and instead impose a sentence of 364 days in county jail that would be ineligible for any early release programs. The People indicated that after Craig's change in plea, it had received new evidence that Craig had been involved in firing a firearm in a negligent manner during a domestic violence incident on July 20, 2024, one week prior to the underlying incident in the case at issue. According to the People, the Antioch Police Department had responded to a call on July 20, 2024, reporting that a shirtless man and a woman were fighting on the street near the caller's residence. The caller reported that he heard a gunshot as the fight was ongoing but did not see who fired the shot; however, he heard the female state "oh so you're going to shoot me now?" before leaving in a vehicle. The caller then observed two men arriving in a car and joining the shirtless man; the three men then appeared to be searching for something in the grass. Upon the officers' arrival on the scene, they located a spent shell casing in the grass area. The officers contacted the shirtless man, later identified as Craig, who claimed that he had been outside the residence on his own and heard a gunshot. The officers observed scratches on Craig's face and chest, which Craig claimed to have received from jumping over a fence after hearing the gunshot; however, the officers determined the scratches were not consistent with Craig's version of events. The People further indicated that while the Antioch police report was provided as part of discovery for the current case, it was only after the crime lab tested the firearms retrieved from Craig's vehicle that one of the firearms was found to be a high probability match to the shell casing retrieved from the Antioch incident. In addition, according to Craig's criminal history, he had been arrested for gun possession five times since 2019 and had most recently failed judicial diversion in a misdemeanor theft case. Based on these factors, the People argued that Craig had a high risk of recidivism, showed little signs of

4

remorse or willingness to turn away from criminal activity, and posed a danger to public safety.

At the sentencing hearing on April 1, 2025, the trial court stated that based on the additional information provided in the People's sentencing memorandum, it was deviating from its previously indicated sentence of 120 days in county jail, and concluded that 10 months in county jail, with credit for the time Craig had served, would be the new indicated sentence. The trial court stated that "for the record, a major consideration for the Court's initial indicated … was based on the Defense counsel's argument that the case was weak regarding Mr. Craig. There were other individuals that were in the car, and I think, as [the People] indicated at sidebar, Mr. Craig was, his conduct was better than some of the other co-defendants, but the Court learned some additional and disturbing information regarding a possession of a gun and a firing of a gun approximately a week before the incident in this case, which as a result, I think, makes the case much stronger for the [People]. But I think for the Court, the consideration is that Mr. Craig is more of a public safety risk and, therefor[e], the Court indicated to Defense counsel that I would be allowing Mr. Craig to withdraw with his plea. If he does not want to take the new Court indicated of 10 months in the county jail, he would receive credits for the time that he's been on VHDP." The trial court subsequently asked Craig if he wished to withdraw his plea or proceed with sentencing on the new indicated sentence. Defense counsel replied that Craig would be accepting the new indicated sentence, but would be filing a notice of appeal shortly thereafter to "challenge the Court's refusal to enforce the original four-month commitment." When the trial court indicated that such a challenge could be accomplished by withdrawing his no contest plea, counsel stated that Craig did not wish to do so as "there are some benefits that he doesn't necessarily have having served some time on the ankle monitor, having forgone preliminary hearing, alongside co-defendants at the same time, so he's a bit differently postured at this point." The trial court then noted that "the plea agreement does indicate

5

that the Court's 120 days—and the Court indicated was a—he understands the court has given nonbinding, tentative indicated sentence. So whatever that's worth." The trial court then sentenced Craig to the indicated sentence of 10 months in county jail, with credit for 100 days (consisting of 50 days of actual credit served on VHDP and 50 days of conduct credit), but suspended imposition of the sentence and placed Craig on two years of formal probation.[3] The remaining counts were dismissed.

Craig timely appealed and requested a certificate of probable cause, which was granted.

## II. DISCUSSION

Craig argues that the parties entered into an express plea agreement, and he complied with all the terms therein by waiving his right to a preliminary hearing and trial, agreeing to appear at sentence, subjecting himself to VHDP, and "staying out of trouble." Craig therefore contends that the trial court was required to impose the agreed-upon noncustodial sentence of 120 days and violated his due process rights by refusing to do so. In response, the Attorney General argues that because the trial court indicated its tentative sentence to Craig, there was no plea agreement binding the parties to an agreed-upon disposition. We therefore must first construe the intent of the parties and the trial court as demonstrated through the trial court's statements during Craig's change in plea hearing, the plea and waiver form Craig signed and initialed, and the resulting judgment.

### A. Applicable Law

Plea bargaining is "any bargaining, negotiation, or discussion between a criminal defendant, or [his or her] counsel, and a prosecuting attorney or judge, whereby the defendant agrees to plead guilty or nolo contendere, in exchange for any promises,

---

[3] The trial court also took the extraordinary step of staying Craig's remand into custody pending appeal, and it is not clear on this record that the court would have been obliged to grant Craig section 4019 conduct credits for his time served on VHDP under section 1203.016.

6

commitments, concessions, assurances, or consideration by the prosecuting attorney or judge relating to any charge against the defendant or to the sentencing of the defendant." (§ 1192.7, subd. (b) [defining plea bargaining "[a]s used in this section"].) " 'The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.] Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. [Citation.] This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment … . [I]mplicit in all of this is a process of "bargaining" between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in an agreement between them.' [Citations.]" (*People v. Woosley* (2010) 184 Cal.App.4th 1136, 1145 (*Woosley*).) Plea bargaining can affect what charges defendants are convicted of (charge bargaining) or the sentences defendants receive (sentence bargaining). (*People v. Brown* (1986) 177 Cal.App.3d 537, 548.)

" 'Plea bargaining … may be related to an "indicated sentence" but is a distinct way of compromising a case short of trial. When giving an "indicated sentence," the trial court simply informs a defendant "what sentence [it] will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by plea." [Citations.] An accused retains the right to reject the proposed sentence and go to trial. The sentencing court may withdraw from the "indicated sentence" if the factual predicate thereof is disproved.' [Citations.]" (*Woosley, supra,* 184 Cal.App.4th at p. 1146.) The California Supreme Court has advised that a court giving an indicated sentence "should not only identify it as such, but should also ensure that the record makes clear the indicated sentence represents the court's best judgment as to the appropriate punishment

7

for this defendant and this offense, regardless of whether guilt is established by plea or at trial." (*People v. Clancey* (2013) 56 Cal.4th 562, 576 (*Clancey*).)

"[A]n indicated sentence is not a promise that a particular sentence will ultimately be imposed at sentencing. Nor does it divest a trial court of its ability to exercise its discretion at the sentencing hearing, whether based on the evidence and argument presented by the parties or on a more careful and refined judgment as to the appropriate sentence. … [T]he utility of the indicated-sentence procedure in promoting fairness and efficiency depends to a great extent on whether the record then before the court contains the information about the defendant and the defendant's offenses that is relevant to sentencing. The development of new information at sentencing may persuade the trial court that the sentence previously indicated is no longer appropriate for this defendant or these offenses. Or, after considering the available information more carefully, the trial court may likewise conclude that the indicated sentence is not appropriate. Thus, even when the trial court has indicated its sentence, the court retains its full discretion at the sentencing hearing to select a fair and just punishment." (*Clancey, supra,* 56 Cal.4th at pp. 576–577.)

Another significant distinction between a plea bargain and an indicated sentence is that only a plea bargain is subject to the procedural requirements set forth in section 1192.5[4] for the acceptance of a guilty plea. Section 1192.5 applies where a guilty plea is

---

[4] This section provides, in relevant part, that "When the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea. [¶] If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw the plea if the defendant desires to do so." (§ 1192.5, subd. (b) & (c).)

"accepted by the prosecuting attorney in open court. …" (§ 1192.5.)  Thus, that section only governs " 'the procedures to be followed by the trial courts in dealing with negotiated pleas, commonly known as plea bargaining.'  [Citation.]"  (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1181 (*Hoffard*); accord, *People v. Fairbank* (1997) 16 Cal.4th 1223, 1245 [section 1192.5, "by its terms, applies only to 'negotiated pleas' "].)  An indicated sentence is not a negotiated plea and therefore is not subject to section 1192.5. (*Hoffard*, *supra,* at p. 1184, fn. 12.)

**B.     *The Record Reflects that the Disposition was an Indicated Sentence, Not a Negotiated Plea Agreement***

As stated above, Craig claims that the parties stipulated to an agreement in the case whereby he would receive a noncustodial sentence in exchange for entering a plea of no contest.  The Attorney General argues that the record is "abundantly clear" that there was no agreement or bargain made between Craig and the district attorney, and Craig's plea was in exchange for an indicated sentence made by the trial court alone.[5]

In reviewing the record, specifically, the transcript of Craig's plea as it was entered in court and confirmed in his plea and waiver form, we conclude that the disposition was the result of an indicated sentence.  At the outset of the December 17, 2024 hearing, the trial court specifically stated that it had made a "Court indicated of 120 days in the county jail, eligible for all programs, including EMP."  At no point did the People represent during this hearing that this sentence was a negotiated disposition or reflected an agreement between the parties; indeed, in its sentencing memorandum, the

---

[5] The Attorney General argues that because Craig never claimed in the trial court that there was an agreement with the district attorney or that the district attorney had breached such an agreement, he has forfeited such a claim on appeal.  Given that Craig repeatedly stated he was proceeding forward with his no contest plea with the understanding that he would be appealing the court's refusal to enforce its original indicated sentence,  we decline to find forfeiture.

People explicitly requested that the court "depart from its previous court-indicated sentence of 120 days."

Further, in the plea and waiver form on December 17, 2024, Craig did not initial or mark any boxes under section 9, entitled "PLEA AGREEMENT WITH THE DISTRICT ATTORNEY (*Skip to #11 if no agreement with the District Attorney.*)". Indeed, a review of section 11, entitled "OPEN PLEA" shows Craig initialed and marked boxes specifically indicating that the court had given a "non-binding, tentative indicated sentence" of 120 days. Additionally, the beginning of section 11 stated as follows: "Please complete #9 above if there is a plea agreement with the District Attorney," and as discussed, section 9 was not initialed or marked by Craig. Further, at the end of the plea and waiver form, Craig signed and initialed a portion entitled "Defendant's Statement and Plea," which stated the following: "I have read this form (or this form was read to me) and I have initialed the items that apply to my case. I am indicating I understand and agree with what is stated in each item I have initialed."

At sentencing, the trial court provided a detailed description as to why it had previously indicated a sentence of 120 days. The court noted that "a major consideration for the Court's initial indicated … on this case, was based on the Defense counsel's argument that the case was weak regarding Mr. Craig. There were other individuals that were in the car, and I think, as [the People] indicated at sidebar, Mr. Craig was, his conduct was better than some of the other co-defendants." Neither Craig nor his counsel disputed the court's account of the unreported sidebar discussion. We find that such a statement by the trial court further supports our conclusion that 120 days was simply *an indicated sentence* based on the open plea by Craig and the limited information known by the court at the December 17, 2024 hearing. As discussed in more detail below, the trial court would receive additional information regarding Craig at sentencing.

We recognize that the trial court stated that the indicated sentence was for count 8 only and did not discuss the remaining charges until the People ultimately indicated those

10

charges would be submitted for dismissal at sentencing. Generally, "[a] trial court may provide the defendant with an 'indicated sentence' if he or she pleads guilty or no contest to *all* charges and admits all allegations." (*People v. Feyrer* (2010) 48 Cal.4th 426, 434, fn. 6, italics added; see also *Clancey, supra*, 56 Cal.4th at p. 570.) However, in the instant matter, we do not find that the People's submission of the remaining charges for dismissal somehow converted the disposition into a negotiated plea bargain or agreement, as Craig argues on reply. First, Craig does not cite any legal authority in support of such an argument. Second, in submitting the remaining charges for dismissal, the People made no indication that this was being done in exchange for Craig entering his no contest plea or otherwise represented that this dismissal reflected an agreement between Craig and the People as to the disposition of his case. Accordingly, the People's submission of the remaining charges for dismissal does not alter our conclusion that the disposition at issue here was an indicated sentence made by the trial court, not a negotiated plea agreement made between Craig and the People.

## C. *The Trial Court Did Not Err or Abuse Its Discretion in Deviating from its First Indicated Sentence*

Craig next argues that the additional information about the Antioch arrest provided by the People prior to sentencing was not "new" or different information that occurred between entry of his plea and sentencing and therefore should have been immaterial to the trial court's final sentencing decision.

"The matter of ultimate sentencing is a matter of judicial discretion to be exercised within limits prescribed by the Legislature." (*People v. Superior Court (Smith)* (1978) 82 Cal.App.3d 909, 916.) Giving an indicated sentence is within the boundaries of a court's inherent sentencing powers. (*People v. Vessell* (1995) 36 Cal.App.4th 285, 296.) On appellate review, the party attacking a sentence has the burden to show clearly that the court's decision was irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.) Absent such a showing, we presume that the court acted to achieve legitimate

11

sentencing objectives and will not set aside the court's exercise of discretion. (See *ibid*.) "An indicated sentence is just that: an indication. Until sentence is actually imposed, no guarantee is being made. We are … 'tempted at this point to quote that eminent philosopher, baseball great Yogi Berra: "The umpire ain't ruled until [the umpire has] ruled." ' " (*People v. Delgado* (1993) 16 Cal.App.4th 551, 555 (*Delgado*), quoting *City of Stanton v. Cox* (1989) 207 Cal.App.3d 1557, 1564.)

In the instant matter, we find no basis to conclude that the trial court abused its discretion in deviating from the initial indicated sentence based on the new information provided to the trial court regarding the Antioch incident, including the connection between the spent casing found on the scene and the firearm retrieved in the case at hand. As the trial court stated during sentencing, the new information provided was not only "disturbing" but also pertained to "possession of a gun and a firing of a gun approximately a week before the incident in this case, which as a result, I think, makes the case much stronger for the people. But I think for the Court, the consideration is that Mr. Craig is more of a public safety risk." Such information constituted a demonstrable and significant change in facts from what the trial court had previously understood at the time of its initial indicated sentence. The trial court was therefore allowed to use its discretion to indicate a new sentence after learning this new information. (See *Delgado, supra,* 16 Cal.App.4th at p. 553 [finding no abuse of discretion when trial court withdrew the original indicated sentence after learning of defendant's two prior prison terms].)

Further, while Craig claims that the People were exhibiting "buyer's remorse" by providing the details of the Antioch incident immediately before sentencing, even though the Antioch arrest took place before Craig's arrest in the underlying case[6], such an

---

[6] To this point, Craig filed a request for judicial notice on July 23, 2025, asking that this court take judicial notice of the Antioch Police Department report from the July 20, 2024 incident, on the basis that (1) the People had this information well before Craig's change of plea; and (2) failure to disclose it earlier in the proceedings violated the People's obligation to disclose exculpatory information pursuant to *Brady v. Maryland*

argument is immaterial because the disposition was an indicated sentence, not a negotiated plea that the People had agreed to. As the Attorney General correctly notes, because the information was new to the trial court at sentencing, it was within the trial court's discretion to determine that the previous indicated sentence was no longer appropriate. (See *Clancey, supra,* 56 Cal.4th at pp. 576–577 ["The development of new information at sentencing may persuade the trial court that the sentence previously indicated is no longer appropriate for this defendant or these offenses. Or, after considering the available information more carefully, the trial court may likewise conclude that the indicated sentence is not appropriate"].) In conclusion, we find no abuse of discretion in the trial court's deviation from the previously indicated sentence.

### D.      *Specific Performance Was Not the Appropriate Remedy for the Trial Court's Deviation from the Indicated Sentence*

Craig finally argues that because he reasonably relied on the agreement that he would only receive 120 days of noncustodial time, the trial court was required to specifically perform in accordance with this agreement and violated his due process rights by refusing to do so. We find no merit to this claim.

First, when a trial court withdraws an indicated sentence, " '[t]he goal in providing a remedy for breach of the bargain is to redress the harm caused by the violation without prejudicing either party *or curtailing the normal sentencing discretion of the trial judge.* The remedy chosen will vary depending on the circumstances of each case.' [Citations.]" (*Delgado, supra,* 16 Cal.App.5th at p. 555.) Therefore, a reasonable remedy would be for the trial court to provide the defendant with an opportunity to withdraw his or her plea. (*Ibid.*; see also *People v. Mancheno* (1982) 32 Cal.3d 855, 861 (*Mancheno*) ["Courts find withdrawal of the plea to be the appropriate remedy when

---

(1963) 373 U.S. 83. By separate order, we deferred the request for judicial notice for consideration with the appeal. As the report is irrelevant to our resolution of the issue on appeal for the reasons discussed *infra*, we deny the request.

specifically enforcing the bargain would have limited the judge's sentencing discretion in light of the development of additional information or changed circumstances between acceptance of the plea and sentencing"]. ) In contrast, " 'to order *the court* to specifically perform--as distinct from a prosecutor who breaks a bargained-for promise--would 'curtail[] the normal sentencing discretion of the trial judge. …' [Citation.]" (*Delgado, supra,* at p. 555.)

In the instant matter, there is no dispute that at sentencing, the trial court offered Craig the opportunity to withdraw his plea numerous times after stating that it would be deviating from the previous indicated sentence. In making this offer, the trial court clearly explained why it was deviating from its previous indicated sentence and reminded Craig that the plea and waiver form reflected that the indicated sentence of 120 days in county jail was non-binding and tentative. Accordingly, given our conclusion that the trial court provided an indicated sentence that was not guaranteed (and acknowledged by Craig in his plea form), as well as the new information provided to the trial court prior to sentencing, we find that the remedy offered by the trial court to Craig—withdrawal of his plea—was reasonable and appropriate under the circumstances.

Craig also argues that due process requires specific performance of the original sentence because he "detrimentally relied" on the agreement by serving 50 actual days on home detention (a deprivation of his personal liberty) and waived his right to a speedy preliminary hearing (a deprivation of his constitutionally protected rights). However, as Craig himself notes, detrimental reliance focuses on the risks or steps taken by a defendant in reliance on a plea bargain or agreement that the People subsequently withdraw from. (See, e.g., *In re Kenneth H.* (2000) 80 Cal.App.4th 143, 149 [stating that detrimental reliance may be demonstrated by taking certain steps or performing some part of the bargain following acceptance of the plea offer]; see also *Mancheno, supra,* 32 Cal.3d at p. 860 [discussing appropriate remedies for violation of a plea bargain by the People].) Craig does not cite any authority stating that detrimental reliance is a relevant

14

factor in determining a remedy when the trial court withdraws or otherwise does not impose its indicated sentence after entry of a plea, particularly when an indicated sentence, by its very nature, carries no guarantees of being imposed. Accordingly, we find that the trial court afforded Craig the reasonable remedy of withdrawing his plea, which he chose not to do. Under these circumstances, ordering specific performance would constitute an improper limit on the trial court's sentencing discretion in light of the new information it received prior to sentencing.

### III.    DISPOSITION

The judgment is affirmed.

_____

Wilson, J.


WE CONCUR:




_____

Grover, Acting P. J.






_____

Lie, J.




*People v. Craig*
H053185